UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/12/14
```

------------------------------------------------------------x

GUALBERTO VICTORIO, PASCUAL ROJAS, DANY CERNA, FRANCISCO CORTEZ, JUAN SALAS, RODRIGO GARCIA, LAZARO ROMANO, IDELFONSO GIL RODRIGUEZ, KEITH QUINONEZ, and SELVIN MENDEZ VILEZ, and other similarly situated current and former bussers, food runners, prep cooks, and dishwashers employed by Defendants

        Plaintiffs,

-against-

No. 14 Civ. 8678 (CM)

SAMMY'S FISHBOX REALTY CO., LLC, BRIDGE STREET RESTAURANT CORP., CITY ISLAND SEAFOOD CO. INC., FISHBOX RESTAURANT CORP., SEA SHORE RESTAURANT CORP., LOBSTER HOUSE REALTY CO. LLC, CRAB SHANTY REALTY CO., LLC, and SAMUEL CHERNIN individually,

        Defendants.

------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER

McMahon, J.:

Plaintiffs, who work as bussers, food runners, dishwashers, and prep cooks in the Defendants' restaurants, bring this action under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), alleging that Defendants have violated several provisions of each statute. Before the court is Docket #6, Plaintiffs' motion for a preliminary injunction, and Docket #15, the Court's order for Defendants to show cause why a preliminary injunction should not issue. For the reasons stated below, the Court refers this case to the assigned Magistrate Judge (Andrew J. Peck) to conduct a hearing and report back to the Court.

1

## BACKGROUND

### I. Factual Background

The allegations in this complaint concern five seafood restaurants located on City Island: Seashore Restaurant, the Fish Box, the Shrimp Box, the Lobster House, and the Crab Shanty. All these restaurants are owned by defendant Samuel Chernin. (Compl. ¶ 49.) The remaining defendants are the various business entities that operate the restaurants. (Compl. ¶¶ 58-79.)

Plaintiffs are employees of those restaurants.[1] Each has worked as a busser, food runner, prep cook, or dishwasher in one of Defendants' restaurants for at least a year. (Compl. ¶¶ 7-48.)

The complaint alleges that that Defendants implemented time-tracking and payment systems that violated the FLSA and NYLL in several ways.

First, Defendants allegedly docked Plaintiffs' pay for even minor lateness – for example, docking half an hour's pay for arriving to work five minutes late. (Compl. ¶ 117.)

Second, Defendants allegedly failed to pay Plaintiffs for all the hours they worked. (Compl. ¶ 118.)

Third, Defendants allegedly provided food runners, dishwashers, and prep cooks (though not bussers) with two paystubs – an original, which never reflected overtime worked, and a copy, which included a handwritten sum of overtime pay. (Compl. ¶¶ 124-126.) This copy allegedly failed to disclose the number of overtime hours worked, and computed overtime pay at straight time, rather than time and a half. (Compl. ¶¶ 127, 149, 154, 161.)

Fourth, Defendants allegedly paid bussers below the normal minimum wage, despite requiring those bussers to perform "side work" that made them ineligible for the "tip credit" and reduced minimum wage. (Compl. ¶¶ 131-136.) Although Defendants claimed to pay Bussers 15%

---

[1] Lead Plaintiff Gaulberto Victorio left his position as a busser and food runner at Seashore Restaurant in October, 2014. (Compl. ¶ 9.)

2

of tips received by wait staff, they allegedly failed to disclose the total quantity of tips received, and distributed portions of tips received to management and other staff who do not customarily receive tips. (Compl. ¶¶ 139-44.)

Fifth, the complaint alleges that Defendants failed to pay "spread of hours" pay for days on which Plaintiffs worked more than ten hours. (*E.g.*, Compl. ¶¶ 176, 188, 213, 230, 255.)

The relief sought for these alleged violations is, of course, money damages.

Plaintiffs have submitted a proposed amended complaint. (Bauer Reply Decl. Ex. 1 ¶¶ 354-366.) This complaint, unlike the original complaint, includes a claim for retaliation in violation of the FLSA, *see* 29 U.S.C. § 215(a)(3) and the NYLL, *see* N.Y. LAB. LAW § 215(1)(a). The motion for a preliminary injunction, in connection with which the proposed amended complaint is filed, is predicated on allegedly retaliatory actions taken by Defendants in response to the filing of the complaint against several employees at one of the restaurants, Seashore Restaurant.

### Plaintiffs' Motion for a Preliminary Injunction

On November 21, 2014, Plaintiffs moved for a preliminary injunction, "ordering that Defendants, . . . [be] restrained from discharging or otherwise taking retaliatory action against Plaintiffs and all employees in violation of the provisions of" the FLSA, and "authorizing the issuance of a corrective notice to all Plaintiffs and similarly situated employees at all restaurant locations owned by Defendant Chernin explaining the protection against retaliation and the right to participate in this lawsuit." (Docket #6.) That same day, the Part I judge ordered Defendants to show cause why a preliminary injunction should not issue. (Docket #15.)

Plaintiffs argue that a preliminary injunction is required because Defendants have already begun to retaliate against employees who have joined their lawsuit. In particular, four of the bussers who joined the lawsuit were assigned one or two fewer days of work for the weeks of

3

November 10, and November 17, 2014, as compared to the weeks of October 6, October 20, and October 27, 2014. (Bauer Decl. Ex. A.) One busser who joined the lawsuit worked as a runner the week of November 10, but had one fewer work day as a busser the week of November 17, compared to the preceding weeks. (Bauer Decl. Ex. A.) In contrast, four of the five bussers who did not join the Plaintiffs' lawsuit had increased or constant days worked on the week of November 10, 2014, and three of those five also had increased or constant days worked the week of November 17, 2014. (Bauer Decl. Ex. A.)

During both the weeks of November 10, and November 17, 2014, Plaintiffs assert that the bussers who had joined the lawsuit all 2-3days, while those employees who did not join the lawsuit received 4-5 days. (Bauer Decl., Ex. A.)

According to Plaintiffs, not only are they being treated differently from employees who did not join the lawsuit (in that Plaintiffs, but not non-plaintiff employees, are receiving fewer days), but the Plaintiff-employees themselves are also being treated differently than they were before the lawsuit. Juan Salas, who works as a busser at Seashore Restaurant and has worked there for at least five prior Novembers, states that he "had never been assigned to work only three days in a week for the month of November" before filing the lawsuit. (Salas. Decl. ¶ 6.) Pasccual Rojas, who holds the same job, also claimed that he had never received fewer than three days of work in a November week in the 5-6 Novembers during which he has worked at Seashore Restaurant. (Rojas Decl. ¶ 7.)

As further evidence of retaliation, Plaintiffs describe a meeting between Salas, Rohas, and John Arminio – the head manager of the Seashore Restaurant restaurant – at which Arminio told Salas and Rojas that he was reducing their days in retaliation for joining the lawsuit. Specifically, Salas recounts that when he asked Arminio, "What happened?" with the schedule, Arminoi

4

responded: "I'll tell you what happened – you are trying to sue me and you expect to get more hours and days? I used to give you both hours and days. I could have had twenty busboys – instead I chose to give you sixty hours and more. I am your bread and butter." (Salas Decl. ¶¶ 12-13.) Salas claims that Arminio would only change his schedule back (and give him more days) if he signed a letter withdrawing from the lawsuit. (Salas Decl. ¶¶ 14, 17.) Salas claims that similar offers were made to other employees who had joined the lawsuit. (Salas Decl. ¶¶ 18-20; *see also* Rojas Decl. ¶ 15.)

At that same meeting, Arminio also allegedly threatened Salas and Rojas: "I could easily fire you. . . . I can get busboys down the block." (Salas Decl. ¶ 15.) He then stated that the Plaintiffs lacked a case and would pay for Defendants' lawyers after Defendants prevailed in the lawsuit. (Salas Decl. ¶ 15.)

Defendants argue that some of Plaintiffs' assertions are incorrect, and that Plaintiffs have misconstrued the significance of others. Defendants have submitted the Declaration of John Arminio who denies categorically that he has attempted to coerce Plaintiffs into dropping their lawsuit by reducing their hours. (Arminio Decl. ¶¶ 5-6.)

Arminio does not deny that at least some Plaintiff-employees were been given fewer days to work in November compared to October, but he claims that this is a result of the annual "slow season" at City Island, between October and mid-April, during which time few tourists venture to the Island for seafood. (Arminio Decl. ¶¶ 7-11.) Related to the "slow season," Arminio states that Plaintiffs' claims about the historical record are incorrect. Specifically, he claims that many Plaintiffs had worked between 20 and 28 hours per week (fewer than four days) in prior years – the same amount of time they were working for the two disputed weeks in November. (Arminio Decl. ¶ 13.) He has submitted electronic records reflecting those workloads. (*See, e.g.* Arminio

5

Decl. Ex. A at 6 (Salas for the week of November 8, 2010), 11 (Salas for the week of October 29, 2012), 36 (Quinonez for the week of November 18, 2013)).

Arminio also asserts that Plaintiffs are not being treated differently from other employees, even if all employees are receiving fewer days. He notes, for example, that many non-Plaintiff employees were also given only three days to work for some weeks in November, the same workload as Plaintiffs. (Arminio Decl. ¶ 16.) Parity also exists, according to Arminio for the week of December 9, 2014, during which that Plaintiffs and other employees have all been given between two and four days of work. (Arminio Decl. ¶ 15.) Finally Arminio claims that measuring only days worked is misleading, because some of the shifts – for example those given to Salas – were double shifts, which are the equivalent of working two days. (Arminio Decl. ¶ 14, Ex. A at 41.)

Plaintiffs seek an injunction (1) prohibiting retaliatory action, including discharges and reduced working hours, against Plaintiffs until Plaintiffs' FLSA retaliation action is adjudicated, and (2) authorizing issuance of a corrective notice to all Plaintiffs and similarly situated employees at Defendant restaurants explaining the protection against retaliation and their right to participate in the suit.

## DISCUSSION

### I. Standard of Review

In general, "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Furthermore, where an injunction is "mandatory," in that it "alters the status quo by commanding some positive act," a plaintiff must satisfy a heightened standard by "clear[ly] showing that the moving party is entitled

6

to the relief requested." *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010) (internal citations, alterations, and quotation marks omitted).[2]

The party seeking the injunction carries the burden of persuasion to demonstrate "by a clear showing" that the necessary elements are satisfied. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). The failure by the plaintiff to demonstrate any of these factors is fatal to the request for preliminary relief.

When considering a motion for a preliminary injunction, unlike a motion to dismiss, the Court need not accept as true the well-pleaded allegations in Plaintiffs' complaint. *Incantalupo v. Lawrence Union Free Sch. Dist. No. 15*, 652 F. Supp. 2d 314, 317 n.1 (E.D.N.Y. 2009) *aff'd*, 380 F. App'x 59 (2d Cir. 2010).

The issue on this preliminary injunction is whether plaintiffs are likely to succeed on the merits of their retaliation claim – not whether they are likely to succeed on the merits of their underlying wage and hours claim. No answer having yet been filed, the plaintiffs may amend their complaint as of right, so the amended complaint is now the operative pleading. Fed. R. Civ. P. 15(a)(1).

---

[2] The Second Circuit has suggested that its historic alternative, which is that an injunction may issue is a plaintiff shows "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief," remains viable after *Winter*. *See, e.g., Citigroup Global Markets*, supra., 598 F.3d at 35 (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979)). I do not read *Winter* as admitting of any Circuit-specific exceptions.

## II. The Motion for an Immediate Preliminary Injunction is Denied, But a Hearing is Required Before the Court Can Make a Final Ruling.

On the paper record, Plaintiffs fail to carry their burden as to two of the four *Winter* factors, which dooms their request for immediate relief. However, Plaintiffs are entitled to a hearing before the court renders a final decision on the merits.

### A. Plaintiffs Have Not Demonstrated Likelihood of Success on the Merits

To show a substantial likelihood of success, Plaintiffs need not prove with certainty that they are likely to succeed on the merits of their claims. *Citigroup Global Markets*, 598 F.3d at 35-36. However, because Plaintiffs must make a "clear showing" that they are likely to succeed on the merits, "the existence of a factual conflict" will often justify denying a preliminary injunction motion. 11A Wright & Miller, Fed. Prac. & Proc. Civ. § 2948.3 (3d ed.); *see, e.g., Candelaria v. Greifinger*, No. 96-CV-0017, 1997 WL 176314, at *2-3 (N.D.N.Y. Apr. 9, 1997); *200 E. 84th St. Owners, Inc. v. Salomone & Co.*, No. 89 CIV. 5035, 1989 WL 111105, at *1-2 (S.D.N.Y. Sept. 20, 1989); *Forts v. Malcolm*, 426 F. Supp. 464, 467 (S.D.N.Y. 1977).

The most damning evidence offered by Plaintiffs is the testimony of two of the plaintiffs that they were threatened by Arminio, the restaurant manager and Defendants' agent, and that Arminio admitted that he had cut their hours in response to the lawsuit. Plaintiffs would unquestionably have demonstrated a likelihood of success on the merits if their testimony is true. However, Arminio denies that said any such thing. Resolution of that disputed issue of fact will require a hearing at which all parties testify and the Court can make credibility determinations.

Defendants do not challenge the accuracy of the schedules submitted by Plaintiffs, and the schedules do show a reduction in assigned hours starting at about the time Plaintiffs joined this lawsuit. A trier of could infer retaliatory motive from the timing of an adverse action, *see Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 473 (S.D.N.Y. 2008).

But this particular schedule change also coincided with City Island's annual restaurant slowdown in the late fall. It is an undeniable fact that City Island, a summer resort in the northeast corner of New York City, is far less frequented during the winter months. How does that factor into the schedule changes? What, for example, is the appropriate baseline against which one could conclude Plaintiffs suffered a reduced workload? Were there individual factors that accounted for their reduced days? Was seniority a factor? Does the more recent schedule provided by Defendants show that the two weeks of November reflected mere statistical variation?

None of those questions can be answered on the present record, but Plaintiffs' assertion that the Court should rely on the proximity between the changes in Plaintiffs' schedules and the filing of the lawsuit alone is, in the overall context, not nearly as persuasive as it might be in a less seasonal situation. The fact that Defendant's records show similar work hours for years past during November also undercuts the inference of retaliation.

At a hearing the parties will have an opportunity to enhance the record on this point.

**Plaintiffs Have Not Yet Shown a Risk of Irreparable Injury**

Irreparable injury is "the kind of injury for which an award of money cannot compensate." *Sperry Int'l Trade, Inc. v. Gov't of Israel*, 670 F.2d 8, 12 (2d Cir. 1982). Defendants are correct that being discharged from a job, absent special circumstances, is typically compensable with money and so is not irreparable injury. The same, of course, would be true for the lesser retaliation of reducing workload.

But it is settled law that a *retaliatory* discharge "may be found to constitute irreparable injury," because "A retaliatory discharge carries with it the distinct risk that other employees may be deterred from protecting their rights under the Act." *Holt v. Cont'l Grp., Inc.*, 708 F.2d 87, 91 (2d Cir. 1983); *see Mullins v. City of New York*, 307 F. App'x 585, 587 (2d Cir. 2009). Since this

9

motion concerns only plaintiffs' claim of retaliation, the rule on which Defendants rely does not aid their cause.

Of course, irreparable injury does not exist in "every retaliation case." *Holt*, 708 F.2d at 91. Rather, "the risk of weakened enforcement of [federal statutes], both in the instant case and in general, is a factor properly to be weighed by a district court in assessing irreparable injury." *Id.* When a plaintiff asserts that retaliation will chill enforcement of a statute or deter other plaintiffs from joining a lawsuit, the plaintiff "must show some evidence of actual chill that would be cured by the requested injunction." *Bennett v. Lucier*, 239 F. App'x 639, 640 (2d Cir. 2007). The mere fact that Defendants have attempted to persuade other employees not to join the lawsuit – if indeed they have done so – is insufficient to establish an "actual chill." *Id.*

On the current record, Plaintiffs have fallen short of establishing irreparable injury.

Plaintiffs offer no evidence that anything approaching retaliation has gone on at four of the five Defendant restaurants, although all five establishments are owned by the same individual. No employees have been discharged, and Defendant categorically denies that anyone was threatened with discharge.

One named plaintiff, Keith Quinonez, submitted a letter to the Court asking to withdraw from the lawsuit. But Quinonez has not explained why he is withdrawing from the suit; and while I am not naïve about the potential for chilling here, it is difficult to conclude with the certainty require for the issuance of a mandatory injunction that Quinonez withdrew in response to a threat that, even under Plaintiffs' theory, was not directed toward him. In fact, the record as it presently stands contains no evidence that Quinonez was aware of the purported threat when he decided not to go forward. The fact that Quinonez sent to the letter directly to the Court, rather than to his attorneys, is of no evidentiary value.

10

Finally, Plaintiffs' claim of a chilling effect is weakened by the fact that at least one plaintiff has chosen to join the lawsuit since the alleged retaliation first occurred. Plaintiffs note that this plaintiff, Vicente Balbuena, filed his consent to join the lawsuit during the first week of allegedly retaliatory scheduling, and suggest that he may have been unaware of those shift changes. They offer no evidence to support their supposition.

However, given the Plaintiffs' economic status vis a vis their bosses – as evidenced by Arminio's alleged comment concerning the ease with which they could be replaced by people who would not cause trouble – any finding after a hearing that retaliatory actions were taken or that threatening comments were made would cause *this* Court to conclude that the injury to Plaintiffs was irreparable. So the issue of irreparable injury hangs on the likelihood of success on the merits – a matter that can only be decided after a hearing.

### The Other *Winter* Factors Are Irrelevant at This Stage

Because Plaintiffs are unlikely to succeed on the merits and have not established irreparable harm, there is no need to discuss the other *Winter* factors.

### CONCLUSION

For the foregoing reasons, the parties are ordered to contact Judge Peck about scheduling a hearing on the motion for preliminary injunction.

Dated: December 12, 2014

_____
U.S.D.J.

BY ECF TO ALL COUNSEL

11