**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
**GUALBERTO VICTORIO, et al.,**

                               **Docket No.: 1:14-cv-8678 (CM) (AJP)**

                 **Plaintiffs,**

          **-against-**

**SAMMY'S FISHBOX REALTY CO., LLC, et al.,**

                 **Defendants.**
-----------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS AND TO COMPEL ARBITRATION

**MILMAN LABUDA LAW GROUP PLLC**

Joseph M. Labuda, Esq.
Matthew A. Brown, Esq.
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ................................................................1

II.     STATEMENT OF FACTS ..................................................................3

III.    STANDARD ........................................................................9

IV.    ARGUMENT ........................................................................11

         A.  The Parties Agreed to Arbitrate ..........................................................11

         B.  This Dispute Falls Within the Scope of the Arbitration Agreement ...............17

         C.  Congress Did Not Intend FLSA Claims to be
              Nonarbitrable; as such, this Court Need Not Decide
              Whether to Stay the Balance of the Proceedings Pending Arbitration...........18

         D.  Defendants Did Not Waive Their Arbitration Defense ....................................19

V.      CONCLUSION ........................................................................21

# TABLE OF AUTHORITIES

**Cases**

Agrashell, Inc. v. Composition Materials Co.,
40 F.R.D. 395 (S.D.N.Y. 1966) ................................................................. 19

American Express Co. v. Italian Colors Restaurant,
____ U.S. ____, 133 S.Ct. 2304 (2013) ...................................................... 10

Amwar v. Fairfield Greenwich, Ltd.,
2010 WL 3910197 (S.D.N.Y. Sep. 27, 2010) ............................................. 15

Application of Whitehaven S.F., LLC v. Spangler,
No. 13 CIV. 8476 (ER), 2014 WL 4494168 (S.D.N.Y. Sep. 10, 2014) ............. 9

Arakawa v. Japan Network Group,
56 F. Supp. 2d 349 (S.D.N.Y. 1999) ......................................................... 11

Arrigo v. Blue Fish Commodities, Inc.,
704 F. Supp. 2d 299 (S.D.N.Y. Feb. 4, 2010) ........................................... 18

AT&T Mobility, LLC v. Concepcion,
____ U.S. ____, 131 S.Ct. 1740 (2011) ...................................................... 10

Awuah v. Coverall N. Am., Inc.,
703 F.3d 36 (1st Cir. 2012) ...................................................................... 14

AXA Versicherung AG v. New Hampshire Ins. Co.,
391 Fed. App'x. 25 (2d Cir. 2010) ............................................................ 13

Bensadoun v. Jobe-Riat,
316 F.3d 171 (2d Cir. 2003) .................................................................. 9, 10

Bechtel do Brasil Construcoes Ltda. v. UEG Araucaria Ltda.,
638 F.3d 150 (2d Cir. 2011) ..................................................................... 20

Caley v. Gulfstream Aerospace Corp.,
428 F.3d 1359 (11th Cir. 2005) ................................................................ 14

Champion Auto Sales, LLC v. Polaris Auto Sales Inc.,
943 F. Supp. 2d 346 (E.D.N.Y. 2013) ......................................................... 9

Chanchani v. Salomon/Smith Barney, Inc.,
99 CIV. 9219 (RCC), 2001 WL 204214 (S.D.N.Y. Mar. 1, 2001) ............ 11, 12

Cheshire Place Associates v. West of England Ship Owners Mut. Ins. Ass'n (Luxembourg),
    815 F. Supp. 593 (E.D.N.Y. 1993) .................................................................................. 13

Ciago v. Ameriquest Mortgage Co.,
    295 F. Supp. 2d 324 (S.D.N.Y. 2003) ............................................................................ 18

Conticommodity Servs. Inc. v. Philipp & Lion,
    613 F.2d 1222 (2d Cir. 1980) ........................................................................................ 20

D.H. Blair & Co. v. Gottdiener,
    462 F.3d 95 (2d Cir. 2006) ...................................................................................... 14, 15

Dieng v. Coll. Park Hyundai,
    No. CIV.A.DKC2009-0068, 2009 WL 2096076 (D. Md. Jul. 9, 2009) .................... 15, 16

Envirolite Enterprises, Inc. v. Glastechnische Industrie Peter Lisec Gesellschaft M.B.H.,
    53 B.R. 1007, 1013-14 (S.D.N.Y. 1985) ...................................................................... 13

Gaskin v. Stumm Handel GmbH,
    390 F. Supp. 361 (S.D.N.Y. 1975) ................................................................................ 13

Gilmer v. Interstate/Johnson Lane Corp.,
    500 U.S. 20 (1991) .................................................................................................... 17-18

Gonzalez v. Toscorp, Inc.,
    97 CIV. 8158 (LAP), 1999 WL 595632 (S.D.N.Y. Aug. 5, 1999) ................................ 12

Goodman v. Merrill Lynch & Co., Inc.,
    716 F. Supp. 2d 253 (S.D.N.Y. 2010) ........................................................................... 19

Green Tree Fin. Corp.-Alabama v. Randolph,
    531 U.S. 79 (2000) ........................................................................................................ 10

Horvath v. Banco Comercial Portugues, S.A.,
    10 CIV. 4697 (GBD), 2011 WL 666410 (S.D.N.Y. Feb. 15, 2011) ............................... 13

Horvath v. Banco Comercial Portugues, S.A.,
    461 F. App'x. 61 (2d Cir. 2012) .............................................................................. 13, 15

In re Am. Express Merchants' Litig.,
    634 F.3d 187 (2d Cir. 2011) .......................................................................................... 10

JLM Indus., Inc., v. Stolt-Nielsen SA,
    387 F.3d 163 (2d Cir. 2004) ............................................................................................ 9

Jones v. Weibrecht,
    901 F.2d 17 (2d Cir. 1990) ............................................................................. 14

Katz v. Cellco P'ship,
    12 CIV. 9193 (VB), 2013 WL 6621022 (S.D.N.Y. Dec. 12, 2013) ................................ 14

LaVoice v. UBS Fin. Servs., Inc.,
    11 CIV. 2308 (BSJ) (JLC), 2012 WL 124590 (S.D.N.Y. Jan. 13, 2012) ......................... 11

Madison Who's Who of Executive and Prof Is Throughout The World, Inc. v. SecureNet Payment
    Sys., LLC, 2010 WL 2091691 (E.D.N.Y. May 25, 2010) ......................................... 15

Martin v. SCI Mgmt. L.P.,
    296 F. Supp. 2d 462 (S.D.N.Y. 2003) ............................................................. 18

Mazza Consulting Group v. Canam Steel Corp.,
    No. 08 CIV. 38 (NGG), 2008 WL 1809313 (E.D.N.Y. Apr. 21, 2008) ............................. 9

McCaddin v. Southeastern Marine Inc.,
    567 F. Supp. 2d 373 (E.D.N.Y. 2008) ............................................................... 9

Metzler v. Harris Corp.,
    No. 00 CIV. 5847 (HB), 2001 WL 194911 (S.D.N.Y. Feb. 26, 2001) ............................ 17

Morales v. Sun Contractors, Inc.,
    541 F.3d 218 (3d Cir. 2008) ..................................................................... 13-14

Nunez v. Citibank, N.A.,
    08 CIV. 5398 (BSJ), 2009 WL 256107 (S.D.N.Y. Feb. 3, 2009) ................................. 11

Paine Webber Inc. v. Bybyk,
    81 F.3d 1193 (2d Cir. 1996) ....................................................................... 15

Paine Webber Inc. v. Faragalli,
    61 F.3d 1063 (3d Cir. 1995) ....................................................................... 20

Paper Express Ltd. v. Pfankuch Maschinen GmbH,
    972 F.2d 753 (7th Cir. 1992) ...................................................................... 13

Patel v. Contemporary Classics of Beverly Hills,
    259 F.3d 123 (2d Cir. 2001) ....................................................................... 19

Rent-A-Center, West, Inc. v. Jackson,
    561 U.S. 63, 130 S.Ct. 2772 (2010) ................................................................ 10

iv

Reynolds v. de Silva,
      09 CIV. 9218 (CM), 2010 WL 743510 (S.D.N.Y. Feb. 24, 2010) ............................ 11, 18

Sinnett v. Friendly Ice Cream Corp.,
      319 F. Supp. 2d 439 (S.D.N.Y. 2004) ............................................................................ 17

Steele v. L.F. Rothschild & Co.,
      701 F. Supp. 407 (S.D.N.Y. 1988) ........................................................................... 17, 18

Sutherland v. Ernst & Young, LLP,
      726 F.3d 290 (2d Cir. 2013) .......................................................................................... 10

Sydnor v. Conseco Fin. Servicing Corp.,
      252 F.3d 302(4th Cir. 2001) .......................................................................................... 14

Tarulli v. Circuit City Stores, Inc.,
      333 F. Supp. 2d 151 (S.D.N.Y. 2004) ............................................................................ 12

The Bremen v. Zapata Off-Shore Co.,
      407 U.S. 1 (1972) ...................................................................................................... 14-15

Thomson-CSF S.A. v. American Arbitration Ass'n,
      64 F.3d 773 (2d Cir. 1995) ............................................................................................ 11

Walther v. Sovereign Bank,
      386 Md. 412 (2005) ....................................................................................................... 14

Weiss v. LaSuisse,
      154 F. Supp. 2d 734 (S.D.N.Y. 2001) ........................................................................... 13

**Statutes**

9 U.S.C. § 1, et seq. ............................................................................................................. 10, 20

9 U.S.C. § 2 ..................................................................................................................... 2, 10, 19

9 U.S.C. § 3 ............................................................................................................................ 2, 19

9 U.S.C. § 4 ............................................................................................................... 2, 9, 10, 19

**Rules**

Fed. R. Civ. P. 7(a) ................................................................................................................... 19

Fed. R. Civ. P. 8(2)(d) ............................................................................................................... 19

Fed. R. Civ. P. 12(b)(1) .................................................................................... 2, 19, 20

Fed. R. Civ. P. 12(b)(6) .................................................................................... 2, 19, 20

Fed. R. Civ. P. 12(c) ............................................................................................... 19

Fed. R. Civ. P. 12(h)(2) ........................................................................................... 19

Fed. R. Civ. P. 12(h)(3) ........................................................................................... 19

## I.      PRELIMINARY STATEMENT

Defendants Sammy's Fishbox Realty Co., LLC., City Island Seafood Co., Inc., Fishbox Restaurant Corporation, Sea Shore Restaurant Corp., and Individual Defendant Samuel Chernin bring this motion to dismiss this action and compel Plaintiffs to submit their claims to arbitration pursuant to the arbitration agreements (hereinafter "Arbitration Agreement") Plaintiffs signed. Specifically, Plaintiffs entered into Arbitration Agreements with Defendant Sea Shore Restaurant Corp. (hereinafter "Sea Shore") (or other corporate Defendant at the time of their employ) as follows:

- Plaintiff Victorio entered into his Arbitration Agreement on July 16, 2011;

- Plaintiff Rojas entered into his Arbitration Agreement on January 19, 2008;

- Plaintiff Romano entered into his Arbitration Agreement on January 19, 2008;

- Plaintiff Garcia entered into his Arbitration Agreement on January 21, 2008;

- Plaintiff Veliz entered into his Arbitration Agreement on April 6, 2009;

- Plaintiff Salas entered into his Arbitration Agreement on September 1, 2010,

- Plaintiff Quinonez entered into his Arbitration Agreement on March 2, 2012;

- Plaintiff Rodriguez entered into his Arbitration Agreement on March 23, 2012;

- Plaintiff Cortez entered into his Arbitration Agreement on May 14, 2012;

- Plaintiff Balbuera entered into his Arbitration Agreement on May 26, 2014; and

- Plaintiff Cordero entered into his Arbitration Agreement on June 12, 2014.

- Defendants are unaware of any person named "Dany Cerna" in their employ.

Each and every Arbitration Agreement – since in or about 2008 – has the following clause: "For new employees of the Company, the Employee's consent to arbitrate, and the execution of this form, is a condition of your employment with the Company."

1

It is of absolutely no consequence whether the Plaintiffs speak and/or read English because of the ancient maxim that even a blind man must protect himself by procuring someone to read a contract for him.  Notwithstanding, despite the fact the majority of Plaintiffs' dominant language is Spanish, it is simply not true that Plaintiffs do not speak English because their jobs require them to and they communicate with general managers and patrons of Defendants' restaurants in English.

Furthermore, Plaintiffs will not be prejudiced by having their claims heard by the American Arbitration Association ("AAA"), as agreed upon by the parties.  The AAA has a rigorous vetting process for all arbitrators (many of whom who specialize in labor and employment law matters) and Plaintiffs will be able to select arbitrators pursuant to standard AAA rules.  Plaintiffs will also have a full and fair opportunity to present their claims to a neutral arbitrator.  On the other hand, Defendants will be severely prejudiced if Defendants are denied their agreed-upon dispute resolution mechanism.  Federal court litigation is more time consuming, more expensive, more formal, and requires public disclosure of information.  These are all equally important reasons for both parties to seek resolution of this dispute by means of arbitration, which is in contrast less time consuming, less expensive, less formal, and allows for more confidentiality in its dispute resolution process.  Furthermore, per the Arbitration Agreement, Plaintiffs do not incur any greater cost in submitting their dispute to arbitration than they would by initiating this lawsuit.

As a result, because the causes of action Plaintiffs assert are all subject to valid and binding Arbitration Agreements, their Complaint should be dismissed – in its entirety – and arbitration should be compelled under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") and under §§ 2, 3 and 4 of the Federal Arbitration Act ("FAA").  Alternatively, pursuant

to FAA § 3, Plaintiff's lawsuit must be stayed, in its entirety, pending the outcome of compulsory arbitration.

## II.      STATEMENT OF FACTS

On October 30, 2014, Plaintiffs filed the Complaint ("Original Complaint") bringing various causes of action under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") on behalf of themselves and a putative class of all other employees of Defendants. See, generally, Docket Entry 1 (hereinafter "Compl.").

Defendants Sammy's Fishbox Realty Co., LLC., City Island Seafood Co., Inc., Fishbox Restaurant Corporation are all related companies.  Individual Defendant Samuel Chernin is the owner of all corporate Defendants.  Individual Defendant John Arminio[1] (hereinafter "Arminio") and third party Joe Valenti (hereinafter "Valenti") are manager employees of Defendants.  See, generally, Docket Entries 16, 17, 23; Compl. ¶¶ 49-51; Declaration of Joe Valenti (hereinafter "Valenti Decl.") ¶¶ 1-3; Declaration of John Arminio (hereinafter "Arminio Decl.") ¶¶ 1-3.  All Plaintiffs, but one, were or are employed by Defendant Sea Shore.  See, generally, Compl.

In or about the year 2008, it has been the corporate Defendants' policy to have all employees sign arbitration agreements as a condition of their employment.  See Valenti Decl. ¶ 4; see also Arminio Decl. ¶ 4.  When a new employee commences employment with Defendants, the employee is presented with an employment application, federal I-9 form, federal W4 form, an employee handbook together with an acknowledgment form, and an Arbitration Agreement.  See Valenti Decl. ¶ 5; see also Arminio Decl. ¶ 5.  Though the employment applications and federal forms are generally required to be filled out prior to and/or upon the employee's hire, no employee is required nor pressured to sign the employment handbook's receipt and acknowledgment form

---

[1] We note that Arminio was not a named party in the Original Complaint, and has not yet been served with any Amended Complaint; as such, issue has not yet been joined for this defendant.

nor the arbitration agreement if they have questions about the documents or wish to have the time to read it to understand them better before signing.   See Valenti Decl. ¶ 6; see also Arminio Decl. ¶ 6.  All the general managers of the corporate Defendants are tasked with communicating with the employees and obtaining the requisite forms, acknowledgments, and arbitration agreements from the employees.  See Valenti Decl. ¶ 8; see also Arminio Decl. ¶ 8.

The Arbitration Agreement sets forth a dispute resolution policy between Defendant Sea Shore and each and every employee whereby the parties agree to a dispute resolution policy as follows: (a) informal communication, (b) negotiation, (c) mediation, and – failing (a) through (c) – (d) arbitration.  The final page of the three-page Agreement  (the page which Plaintiffs executed) states:

> in the event that a dispute or claim arises that [cannot be resolved by (a), (b), or (c), above,] that concerns any aspect, part, or portion of Employee's employment with the Company…then the Employee and the Company agree to submit such dispute or claim to [arbitration] as a last and final means of resolving any such claims or disputes… See, e.g., Valenti Decl. Ex. C.

Similarly, the Seashore Restaurant Employee Handbook ("Handbook") provides as follows:

> Seashore Restaurant operates with an 'open door' policy, and all employees are invited to ask about any policies and procedures they do not understand and to make suggestions for changes.  We are happy to answer any of your questions and want to [assist you] in helping you to achieve the goals that you have set for yourself in this position.  See Valenti Decl. ¶ 7, Ex. A at 2; Arminio Decl. ¶ 7.

All Plaintiffs executed a receipt and acknowledgment of the Handbook.  See Valenti Decl. Exs. C, E, G, I, K, M, O, Q, S, T, and U, respectively, at 4.

The final paragraph immediately preceding, and on the same page as, the signature line of the Arbitration Agreement states – in bold – that:

**Employee knowingly, voluntarily and willingly agrees to submit any claim or dispute described above (or any other direct or indirect claim involving or arising from Employee's employment with the Company) to arbitration and hereby agrees to waive and forgo and [sic] right of entitlement that Employee may have had to submit such claims to a court of law (including the possible right to have a jury hear such claims or disputes) or other tribunal or agency.** See, e.g., Valenti Decl. Ex. C at 3.

Plaintiffs signed, dated, and printed their name on the *very same* page containing the above quoted bolded paragraph.  See Valenti Decl. Exs. C, E, G, I, K, M, O, Q, S, T, and U, respectively, at 3.

Defendants instituted the Handbook and the Arbitration Agreement as a requirement and condition of all employees' employment in or about 2008.  See Valenti Decl. ¶ 4; see also Arminio Decl. ¶ 4.  After doing so, it became Defendants' policy to personally present the Handbook acknowledgment form and Arbitration Agreement to every single employee, whether they were new hires or existing employees, and provide an explanation as to what those documents were.  See Arminio Decl. ¶¶ 10, 14-15, 18; see also Valenti Decl. ¶ 14.  Generally speaking, employees who had no questions about the Handbook acknowledgment and Arbitration Agreement signed the requisite forms on the same day they were presented with them.  See Valenti Decl. ¶ 9; Arminio Decl. ¶ 16.  Employees would not immediately sign the documents, however, if: (a) they had questions about the documents and wanted more time to review them, to which there was no objection; (b) they stated they did not understand the document and wished to ask someone other than Defendants to explain it to them; or (c) they wanted a few days to review the documents before signing them.  See Valenti Decl. ¶¶ 10-11; Arminio Decl. ¶¶ 17-20.  The employees are never pressured to sign the Handbook acknowledgments and Arbitration Agreements immediately, nor have any demands been made with respect to the execution of these documents.  See Arminio Decl. ¶ 12; Valenti Decl. ¶ 21.  This is so because, regardless of whether the employees sign the Handbook acknowledgments or Arbitration Agreements, the corporate

5

Defendants' mandatory employment policies are nonetheless conditions of employment or continued employment for all employees.  See Valenti Decl. ¶ 13.  Generally speaking, it would be Arminio's practice to ask an employee about the Handbook acknowledgment and/or the Arbitration Agreement and inform the employee that he needs the documents back if Arminio did not receive them executed within three (3) days.  See Arminio Decl. ¶ 22.  It is also the Defendants' practice and policy to review its employee records approximately every six (6) months to ensure every employee has executed the requisite Handbook acknowledgment and Arbitration Agreement.  See Valenti Decl. ¶ 15.  For those employees who have not yet signed those documents, the general managers (see, e.g., Valenti Decl. ¶ 8; see also Arminio Decl. ¶ 8) inquire of the employee about the forms.  See Valenti Decl. ¶ 16.

Though it is the responsibility of all general managers to present the Handbook acknowledgments and Arbitration Agreements to all employees (see, e.g., Valenti Decl. ¶ 8; see also Arminio Decl. ¶ 8), Arminio personally presented these documents to all the named Plaintiffs (except for Plaintiff Dany Cerna).  See Arminio Decl. ¶ 11.  Arminio presented the Handbook acknowledgments and Arbitration Agreements on an individual basis to Plaintiffs Victorio, Cortez, Salas, Rodriguez, Quinonez, Veliz, Cordero, and Balbuera upon their hire.  Id. at ¶ 12.  Because Plaintiffs Rojas, Garcia, and Romano were existing employees before the corporate Defendants instituted the Handbook and the required Arbitration Agreement as a condition of employment, those employees were presented with those documents after they commenced employment with Defendants.  See Arminio Decl. ¶¶ 13, 24.  These Plaintiffs – as well as all existing employees at the time – were presented with a Handbook acknowledgement form and Arbitration Agreement to review and sign in one of two ways: (a) at the front desk when they arrived in the morning to see what section of the restaurant they are to work in for the day, a daily

ritual at Sea Shore; or (b) together with their pay check.  Id. at ¶¶ 25-27.   Just like with the new employees upon their hire, some existing employees read the documents and signed them right away, others had questions and wanted an explanation from Arminio, others had questions and wanted to ask somebody outside of Sea Shore, while others simply asked for a few days to review the documents themselves.  Id. at ¶ 28.   Regardless of what happened, every single existing employee and new employee – upon hire – eventually returned signed Handbook acknowledgment forms and Arbitration Agreements.  See Arminio Decl. ¶¶ 23, 29; Valenti Decl. Exs. C, E, G, I, K, M, O, Q, S, T, and U, respectively, at 3-4.

Valenti and the other general managers do not speak Spanish and communicate with all employees, including Plaintiffs, in English.  See Valenti Decl. ¶ 17-18.   Though Arminio speaks some Spanish, he nonetheless normally communicates with the employees, including Plaintiffs, in English.  Id. at ¶ 18; Arminio Decl. ¶ 30.   Even though most Plaintiffs' dominant language is Spanish, all Plaintiffs communicate with management and with patrons in English.  See Valenti Decl. ¶¶ 18-19; Arminio Decl. ¶¶ 30-31, 33.   Plaintiffs, and all bussers, constantly communicate with patrons of corporate Defendants' restaurants by greeting them, taking drink orders, accommodating requests for bread, wine, baby chairs, French fries, utensils, etc., and they do so entirely in English.  See Valenti Decl. ¶¶ 19, 21; Arminio Decl. ¶ 33.   The only time Plaintiffs speak to patrons in Spanish is when patrons approach Plaintiffs and initiate the conversation in Spanish.  See Valenti Decl. ¶ 20; Arminio Decl. ¶ 32.   Plaintiffs speak to such patrons in an effort to earn a better tip, as Spanish speaking patrons tend to tip more when they are waited on by native Spanish speakers.  Id.   Plaintiffs, like all bussers, are essentially quasi-waiters and are entitled to a portion of tips earned by waiters.  See Valenti Decl. ¶ 22; Arminio Decl. ¶ 34.   Though all Plaintiffs have a sufficient understanding of the English language such that the general managers

are able to communicate with Plaintiffs in English, Plaintiff bussers are especially capable English speakers because speaking English is a job requirement at Sea Shore.  <u>See</u> <u>Valenti</u> <u>Decl.</u> ¶¶ 23-24; <u>Arminio</u> <u>Decl.</u> ¶¶ 35-36.  In fact, before hiring any busser, Arminio personally interviews the prospective employee entirely in English to determine whether he is qualified to be a busser.  <u>See</u> <u>Arminio</u> <u>Decl.</u> ¶ 9.  If the employee does not speak English, he is not qualified to work as a busser. <u>Id.</u>  Some employees, however, have no interaction with patrons of Sea Shore because they work primarily in the kitchen.  <u>See</u> <u>Valenti</u> <u>Decl.</u> ¶¶ 39, 44, 47.

Plaintiff Victorio commenced employment with Sea Shore and signed his Arbitration Agreement on July 16, 2011.  <u>See</u> <u>Valenti</u> <u>Decl.</u> ¶¶ 25-26, <u>Exs.</u> B and C.  Plaintiff Rojas commenced his employment with Sea Shore on July 10, 2009, but – because he worked for Defendant Sammy's Fish Box Restaurant (hereinafter "Sammy's") prior to working at Sea Shore, he signed his Arbitration Agreement on January 19, 2008.  <u>Id.</u> at ¶¶ 27-28, <u>Exs.</u> D and E.  Plaintiff Cortez commenced employment with Sea Shore on May 11, 2012 and signed his Arbitration Agreement on May 14, 2012, three (3) days later.  <u>Id.</u> at ¶¶ 29-30, <u>Exs.</u> F and G.  Plaintiff Salas commenced employment with Sea Shore and signed his Arbitration Agreement on September 1, 2010.  <u>Id.</u> at ¶¶ 31-32, <u>Exs.</u> H and I.  Plaintiff Garcia initially commenced his employment with Sammy's and then moved to Sea Shore early in 2008.  <u>Id.</u> at ¶ 33, <u>Ex.</u> J; <u>Compl.</u> ¶ 29.  Plaintiff Garcia signed his Arbitration Agreement on January 21, 2008.  <u>See</u> <u>Valenti</u> <u>Decl.</u> ¶ 34, <u>Ex.</u> K. Plaintiff Romano commenced employment with Sea Shore over twenty (20) years ago, and signed his Arbitration Agreement on January 21, 2008.  <u>Id.</u> at ¶¶ 35-37, <u>Exs.</u> L and M.  Plaintiff Rodriguez commenced employment with Sea Shore and signed his Arbitration Agreement on March 23, 2012.  <u>Id.</u> at ¶¶ 38, 39, <u>Exs.</u> N and O.  Plaintiff Quinonez commenced employment with Sea Shore on March 2, 2012 and signed his Arbitration Agreement on March 23, 2012, over a month later.

Id. at ¶¶ 41-42, Exs. P and Q.  Plaintiff Veliz commenced employment with Sea Shore and signed

his Arbitration Agreement on April 6, 2009.  Id. at ¶¶ 43, 45, Exs. R and S.  Plaintiff Cordero

commenced his employment in or about June 2014 and signed his Arbitration Agreement on June

12, 2014.  Id. at ¶¶ 46, 48, Ex. T.  Plaintiff Balbuera commenced his employment in or about May

2014 and signed his Arbitration Agreement on May 26, 2014.  Id. at ¶¶ 49-50, Ex. U.  Finally,

Defendants have no record or recollection of any Dany Cerna being employed by any of its

restaurants.  Id. at ¶¶ 51-52; Arminio Decl. ¶ 11.

Accordingly, Plaintiffs cannot claim ignorance toward the binding nature of this

Agreement and its language which precludes their filing the instant lawsuit.

## III.    STANDARD

Courts in this Circuit must determine four (4) issues in the context of a motion to compel

arbitration: (1) whether the parties in fact agreed to arbitrate; (2) the scope of the arbitration

agreement; (3) if the parties assert federal statutory claims, whether Congress intended those

claims to be nonarbitrable; and (4) if the court concludes that some, but not all, of the claims in the

case are arbitrable, whether to stay the balance of the proceedings pending arbitration. See

Application of Whitehaven S.F., LLC v. Spangler, No. 13 CIV. 8476 (ER), 2014 WL 4494168, at

*6 (S.D.N.Y. Sep. 10, 2014) (citing JLM Indus., Inc. v. Stolt–Nielsen SA, 387 F.3d 163, 169 (2d

Cir. 2004); accord Champion Auto Sales, LLC v. Polaris Sales Inc., 943 F.Supp.2d 346, 351

(E.D.N.Y. 2013).

The Court must evaluate a motion to compel arbitration pursuant to the FAA, 9 U.S.C. § 4

(2000), under a standard similar to the standard for a summary judgment motion. See McCaddin v.

Southeastern Marine Inc., 567 F. Supp. 2d 373 (E.D.N.Y. 2008) (citing Bensadoun v. Jobe-Riat,

316 F.3d 171, 175 (2d Cir. 2003); see also Mazza Consulting Group v. Canam Steel Corp., No.

08-CV-38 (NGG), 2008 WL 1809313, at *1 (E.D.N.Y. Apr. 21, 2008). "When such a motion is opposed on the ground that no agreement to arbitrate has been made between the parties, a district court should give the opposing party the benefit of all reasonable doubts and inferences that may arise." Mazza Consulting Group, 2008 WL 1809313, at *1. "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." See Bensadoun, 316 F.3d at 175 (citing 9 U.S.C. § 4).

Pursuant to the FAA – 9 U.S.C. § 1, *et seq.* – this Court's analysis must begin and end with the Arbitration Agreement and its express provision compelling arbitration of all claims that arise between Plaintiffs and Defendants.  See 9 U.S.C. § 2 ("A written provision in any…contract … to settle by arbitration a controversy thereafter arising out of such contract …  shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."); see also American Express Co. v. Italian Colors Restaurant, ___ U.S. ___, 133 S.Ct. 2304 (2013) (holding that "[t]he text [of the Federal Arbitration Act] reflects the overarching principle that arbitration is a matter of contract. See Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 67, 130 S.Ct. 2772, 2776 (2010).

The FAA unequivocally compels courts to "rigorously enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes, and the rules under which arbitration will be conducted."  See Italian Colors, ___ U.S. at ___, 133 S.Ct. at 2309 (2013) (internal quotations and citations omitted); see also Id. at 2308-09, citing AT&T Mobility, LLC v. Concepcion, ___ U.S. at ___, 131 S.Ct. at 1745 (2011) ("Congress enacted the FAA in response to widespread judicial hostility to arbitration"); Sutherland v. Ernst & Young, LLP, 726 F.3d 290 (2d Cir. 2013) (per curiam) (FLSA/NYLL case citing decision in Italian Colors, *supra*, and enforcing the arbitration agreement).

10

The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." See Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 91 (2000) (internal citations omitted); see also In re Am. Express Merchants' Litig., 634 F.3d 187, 191 (2d Cir. 2011) (abrogated on other grounds). "Once a court is satisfied that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." LaVoice v. UBS Fin. Servs., Inc., 11 CIV. 2308 (BSJ) (JLC), 2012 WL 124590, at *2 (S.D.N.Y. Jan. 13, 2012) (quoting Nunez v. Citibank, N.A., 08 CIV. 5398 (BSJ), 2009 WL 256107, at *2 (S.D.N.Y. Feb. 3, 2009) (internal citations omitted). However, where all of the claims asserted are subject to arbitration, the Court should dismiss rather than stay the case. See, e.g., Reynolds v. de Silva, 09 CIV. 9218 (J. McMahon), 2010 WL 743510, at *8 (S.D.N.Y. Feb. 24, 2010) (noting that "[a]ll courts of which we are aware have followed the rule that, [w]here all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings" (internal citations omitted)).

IV.     ARGUMENT

A.     The Parties Agreed to Arbitrate.

With respect to the first factor, courts employ "ordinary principles of contract and agency" in order to determine whether the parties have agreed to arbitrate. See Chanchani v. Salomon/Smith Barney, Inc., No. 99 CIV. 9219 (RCC), 2001 WL 204214, at *2 (S.D.N.Y. Mar. 1, 2001) (citing Thomson–CSF S.A. v. American Arbitration Ass'n, 64 F.3d 773, 776–77 (2d Cir. 1995). A party generally will be held to a signed contract unless he can demonstrate special circumstances, such as duress or coercion, that contradict his intent to be bound. Id. (citing Arakawa v. Japan Network Group, 56 F.Supp.2d 349, 352 (S.D.N.Y.1999) (applying New York law).

The parties in this action entered into a binding contract which expressly provides that the parties agree to submit all claims and disputes – including the claims that Plaintiffs brought in this action – to arbitration and to waive their rights to seek relief in such disputes in Court.  The Plaintiffs here understood what they were signing and continued their employment with Defendant Sea Shore with full knowledge of the agreement to arbitrate.  See Chanchani, 2001 WL 204214 at *2.; see also Gonzalez v. Toscorp, Inc., No. 97 CIV. 8158 (LAP), 1999 WL 595632, at *1, *2 (S.D.N.Y. Aug. 5, 1999) (finding that even in the absence of a written agreement to arbitrate, an employee who receives an arbitration policy and continues his employment is bound by its terms). Under such circumstances – that is, signing an arbitration agreement as an express condition of employment – arbitration is clearly warranted.  See Tarulli v. Circuit City Stores, Inc., 333 F. Supp. 2d 151, 158 (S.D.N.Y. 2004) (compelling arbitration where the plaintiff "voluntarily signed the [arbitration] Agreement and knowingly accepted employment with the Defendant on the express condition that employment-related disputes would be settled through arbitration").

Plaintiffs' counsel indicated at the December 12, 2014 conference before this Court that most of these Plaintiffs do not speak English, though this has not been raised in their papers. Defendants dispute Plaintiffs' alleged lack of understanding of the English language.  Though it is of no consequence that Plaintiffs do not speak the English language under the law, Plaintiffs will undoubtedly argue this in an effort to mount a defense to the enforcement of their Arbitration Agreements.  However, this is belied by the fact that the general managers – save for one who speaks some Spanish – do not speak Spanish and communicate with Plaintiffs in English.  See Valenti Decl. ¶¶ 17-19; Arminio Decl. ¶¶ 30-31, 33.  All the managers communicated and currently communicate with Plaintiffs in English on a regular basis.  Id.  Furthermore, Plaintiffs

communicated and currently communicate with patrons of Defendants' restaurants in English. See Valenti Decl. ¶¶ 19, 21; Arminio Decl. ¶ 33.

It is a fundamental principle of contract law that a person who signs a contract is presumed to know its terms and consents to be bound. Failure to read a contract – even if such failure is brought about by an inability to understand the language – is not an excuse or defense to enforcement of the contract terms. See Horvath v. Banco Comercial Portugues, S.A., No. 10 CIV. 4697 (GBD), 2011 WL 666410, at *4 (S.D.N.Y. Feb. 15, 2011) aff'd, 461 F. App'x 61 (2d Cir. 2012) (citing AXA Versicherung AG v. New Hampshire Ins. Co., 391 Fed. App'x. 25, 30 (2d Cir. 2010) ("If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him") (citations omitted); Weiss v. La Suisse, 154 F. Supp. 2d 734. 737 (S.D.N.Y.2001) ("While the Court was originally troubled by the fact that the paperwork to obtain the policies was printed in a language the plaintiffs do not speak, defendants remind me of the ancient contract maxim that even a blind man must protect himself by procuring someone to read a contract for him"); Envirolite Enterprises, Inc. v. Glastechnische Industrie Peter Lisec Gesellschaft M.B.H., 53 B.R. 1007, 1013–14 (S.D.N.Y.1985) (enforcing a contract clause despite it being in German when the rest of the contract was in English); Cheshire Place Associates v. West of England Ship Owners Mut. Ins. Ass'n (Luxembourg), 815 F. Supp. 593, 597 (E.D.N.Y.1993) ("Presumably Frank reads and understands English. Even if he does not, failure to read or investigate the terms of the contract one signs is not a defense to enforcement of the contract"); Gaskin v. Stumm Handel GmbH, 390 F. Supp. 361, 367 (S.D.N.Y.1975) (enforcing a contract clause in German even when one party did not speak German and asked for and did not receive an English translation).

Other Circuit Courts have similarly held so.   See Paper Express Ltd. v. Pfankuch Maschinen GmbH, 972 F.2d 753, 758 (7th Cir. 1992) ("the fact that the rules were in German [does not] preclude enforcement of the [forum selection clause].  In fact, a blind or illiterate party (or simply one unfamiliar with the contract language) who signs the contract without learning of its contents would be bound.  Mere ignorance will not relieve a party of her obligations and she will be bound by the terms of the agreement"); Morales v. Sun Constructors, Inc., 541 F.3d 218, 222 (3d Cir. 2008) ("In the absence of fraud, the fact that an offeree cannot read, write, speak, or understand the English language is immaterial to whether an English-language agreement the offeree executes is enforceable") (emphasis added); see also Walther v. Sovereign Bank, 386 Md. 412, 444 (2005) (holding that "if [plaintiffs] did not [read the document] before they signed the agreement, they have no persons to blame but themselves. As expressed [before], we are loath to rescind a conspicuous arbitration agreement that was signed by a party whom now, for whatever reason, does not desire to fulfill that agreement.").

Furthermore, there is no requirement that such arbitration agreements be signed knowingly and voluntarily.  See Katz v. Cellco P'ship, No. 12 CV 9193 (VB), 2013 WL 6621022, at *13 (S.D.N.Y. Dec. 12, 2013) (citations omitted).  In fact, countless Circuit Courts have held so.  See Morales, 541 F.3d at 224 ("applying a heightened 'knowing and voluntary' standard to arbitration agreements would be inconsistent with the FAA"); Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1372 & 1371 n. 12 (11th Cir. 2005) (concluding "general contract principles govern the enforceability of arbitration agreements and [ ] no heightened 'knowing and voluntary' standard applies"); Sydnor v. Conseco Fin. Servicing Corp., 252 F.3d 302, 307 (4th Cir. 2001) (declining to apply "a more demanding standard" to enforce arbitration agreement which resulted in waiver of

14

jury trial right); see also Awuah v. Coverall N. Am., Inc., 703 F.3d 36, 44 (1st Cir. 2012) (no heightened notice requirement to enforce agreement to arbitrate).

A party seeking to enforce such an agreement need only show that it reasonably communicated the provision to the party it seeks to enforce it against.  See D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006).  "Second, a forum-selection clause will be upheld unless 'the clause was obtained through fraud or overreaching.' " Id. (quoting Jones v. Weibrecht, 901 F.2d 17, 18 (2d Cir.1990) (citing The Bremen v. Zapata Off–Shore Co., 407 U.S. 1, 15 (1972)).  "Finally, unless it is clearly shown that 'enforcement would be unreasonable and unjust,' forum-selection clauses will be enforced." Id. (quoting The Bremen, 407 U.S. at 15).

Even if the Plaintiffs were to allege that they do not remember receiving a copy of the Agreement does not mean that the arbitration agreement was not reasonably communicated to them and thereby somehow unenforceable. See Horvath, 2011 WL 666410, at *5 (citing Anwar v. Fairfield Greenwich, Ltd., 2010 WL 3910197, at *4 (S.D.N.Y. Sep. 27, 2010) (enforcing forum selection clause despite Plaintiff's allegation that he never saw the agreement that contained the clause); Madison Who's Who of Executive and Prof Is Throughout The World, Inc. v. SecureNet Payment Sys., LLC, 2010 WL 2091691, at *3 (E.D.N.Y. May 25, 2010) (citing Paine Webber Inc. v. Bybyk, 81 F.3d 1193, 1201 (2d Cir. 1996)) (enforcing a forum selection clause despite Plaintiff's allegation that he never saw it when the arbitration agreement was incorporated by reference)).  Accordingly, if parties made agreements they could later avoid enforcement of by claiming that they did not read it, but signed it, or read the document but did not understand it due to language or other issues, the entire purpose of reducing agreements to writing would be for naught.

In <u>Dieng v. Coll. Park Hyundai</u>, the plaintiff employees – whose first language was not English – were given arbitration agreements to review and sign upon commencing employment. No. CIV.A.DKC2009-0068, 2009 WL 2096076 at *1 (D. Md. July 9, 2009).   The arbitration provision was in bold.  <u>Id.</u>  The arbitration agreement was separate and apart from any employee handbook, which only contained a receipt and acknowledgment form while the arbitration agreement created a binding contract.  <u>Id.</u> at *3, *4.   The Court there held that it was not unconscionable to require the plaintiffs to seek redress for their claims in arbitration as they agreed, and compelled arbitration.  <u>Id.</u> at *7, *8.

Like in <u>Dieng</u>, though Plaintiffs first language was not English, they nonetheless spoke in English.   Plaintiffs communicate with their managers, non-Spanish speaking colleagues, and patrons of Sea Shore in English.  <u>See</u> <u>Valenti</u> <u>Decl.</u> ¶¶ 17-19, 21; <u>Arminio</u> <u>Decl.</u> ¶¶ 30-31, 33.  The arbitration agreements in <u>Dieng</u> are very much similar to those here, as well.  When presented with anything Defendants have asked them to sign in the past, Plaintiffs have always been given an opportunity to review any such documents before signing them.   <u>See</u> <u>Valenti</u> <u>Decl.</u> ¶¶ 10-12; <u>Arminio</u> <u>Decl.</u> ¶¶ 17-22.  Specifically, Defendants required these agreements – whether signed or not – as a condition of employment.  <u>See</u> <u>Valenti</u> <u>Decl.</u> ¶ 4; <u>Arminio</u> <u>Decl.</u> ¶ 4.  As such, Plaintiffs not only had an opportunity to review these documents before commencing their employment, they also had the right to refuse to sign the Agreement and move on to seek other gainful employment.  As noted to this Court previously, the New York City busser job market is large and accessible to Plaintiffs who could have refused to sign the Arbitration Agreement and found employment elsewhere.  <u>See</u> <u>Docket Entry</u> 24 at 13; <u>see also</u> <u>Docket Entry</u> 25-4.   However, Plaintiffs nonetheless agreed to sign the Arbitration Agreements and continue their employment. <u>See</u> <u>Valenti</u> <u>Decl.</u> <u>Exs.</u> C, E, G, I, K, M, O, Q, S, T, and U, respectively, at 3.

It is important to note that the Arbitration Agreement is a two-way street. Defendants also agreed to resolve any disputes they have with Plaintiffs in arbitration. Defendants went so far as to make it fair and equitable for employees to initiate an arbitration proceeding against them by covering all fees but those that Plaintiffs would have necessarily paid anyway. See, e.g., Valenti Decl. Ex. C at 3 ("The fees and cost of the arbitration shall be shared by the parties as follows: If the employee seeks to arbitrate the case (or asserts a claim that is determined to be subject to arbitration), the *Employee shall pay that amount of fees or costs as the Employee would be required to pay if he or she had pursued his or claims in court*. The Company shall pay the remaining fees and costs.") (emphasis added).

Moreover, enforcing the Arbitration Agreements Plaintiffs signed as a condition of their employment does not waive any of Plaintiffs' rights, as Plaintiffs can and – if they so desire – should pursue their statutory rights; it simply carries forth the parties' agreement to have that dispute resolved in another forum. See Sinnett v. Friendly Ice Cream Corp., 319 F. Supp. 2d 439, 445 (S.D.N.Y. 2004) (holding that the plaintiff has not waived any of his rights under the FLSA; rather he has agreed to have those rights adjudicated in an alternative forum than this Court). Accordingly, this Court must find that the parties agreed to arbitrate, under the first part of the Second Circuit's test, in favor of dismissing this action and compelling arbitration.

**B.   This Dispute Falls Within the Scope of the Arbitration Agreement.**

The parties here can and did agree to submit FLSA and NYLL claims to arbitration. The Agreement directs the parties to submit to arbitration all disputes that concern "any aspect, part, or portion of Employee's employment with the Company" and "any other direct or indirect claim involving or arising from Employee's employment with the Company."

Courts have recognized and enforced parties' decisions to arbitrate FLSA and NYLL claims. See Steele v. L.F. Rothschild & Co., 701 F. Supp. 407, 408 (S.D.N.Y. 1988) (compelling arbitration of FLSA claims); Sinnett, 319 F. Supp. 2d at 445 (finding that "[plaintiff] did not waive any of his rights under the FLSA by entering into an arbitration agreement; rather he has agreed to have those rights adjudicated in an alternative forum than this Court" and therefore "claims brought under the FLSA may be addressed pursuant to an arbitration provision"); see also Metzler v. Harris Corp., No. 00 CIV 5847 (HB), 2001 WL 194911, at *5 (S.D.N.Y. Feb. 26, 2001) (compelling arbitration of claims asserted under NYLL).

Thus, it follows that the Arbitration Agreements compel Plaintiffs to submit the claims brought in this action to arbitration. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 23, 35 (1991) (holding that a claim arising under the ADEA fell within the scope of the parties agreement to submit "any dispute, claim or controversy arising between [plaintiff] and [defendant]."). Accordingly, this Court must weigh this second factor – whether Plaintiffs claims fall within the scope of the Agreement's arbitration provision – in favor of dismissing this action and compelling arbitration.

### C. Congress Did Not Intend FLSA Claims to be Nonarbitrable and as such, This Court Need Not Decide Whether to Stay the Balance of the Proceedings Pending Arbitration.

As a general principle, "It is well settled that federal statutory claims can be the subject of arbitration, absent a contrary congressional intent." See Reynolds, 2010 WL 743510, at *5 (citations omitted). "The burden of showing such legislative intent lies with the party opposing arbitration." Id. (citations omitted). Courts in this District have repeatedly found FLSA claims to be arbitrable. Id. (citing Arrigo v. Blue Fish Commodities, Inc., 704 F. Supp. 2d 299, 304 (S.D.N.Y. Feb. 4, 2010) (concluding that "Congress did not intend FLSA claims to be

non-arbitrable"); <u>Martin v. SCI Mgmt. L.P.</u>, 296 F. Supp. 2d 462, 467 (S.D.N.Y. 2003) (finding "no indication" that Congress intended plaintiff's FLSA claim to be nonarbitrable); <u>Ciago v. Ameriquest Mortgage Co.</u>, 295 F. Supp. 2d 324, 332 (S.D.N.Y. 2003) ("Congress has not evinced an intention to preclude arbitration of FLSA claims."); <u>Steele</u>, 701 F. Supp. at 408 (compelling arbitration of FLSA claims).

Because Congress did not intend FLSA claims to be nonarbitrable – as Courts have held – an Order dismissing the First Amended Complaint is warranted as opposed to staying the balance of the proceedings pending arbitration.  <u>See</u> <u>Arrigo</u>, 704 F. Supp. at 304-05 (holding that "[t]he FAA directs the district court, 'on application of one of the parties,' to enter a stay in a case where the asserted claims are 'referable to arbitration[;]' [h]owever, [a]ll courts of which we are aware have followed the rule that, '[w]here all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings'").

### D. <u>Defendants Did Not Waive Their Arbitration Defense</u>

In the instant matter, Plaintiffs filed their Complaint on October 30, 2014 and timely served the Defendants herein on November 1, 2014.  <u>See</u> <u>Docket Entries</u> 1, 7-14.  Pursuant to the FRCP, Defendants had twenty-one (21) days – until November 22, 2014 – to file an answer.  <u>See</u> <u>Fed. R. Civ. P.</u> 8(d)(2).  On November 24, 2014, Defendants – with the consent of Plaintiffs – sought an extension of time to answer until December 19, 2014, which the Court granted on December 2, 2014.  <u>See</u> <u>Docket Entries</u> 21-22.  However, Plaintiffs filed their motion for a preliminary injunction on November 21, 2014, before Defendants even had an opportunity to answer, and well before issue was joined.  See <u>Docket Entry</u> 6.

Defendants' arbitration defense is raised under FRCP Rules 12(b)(1) – lack of subject matter jurisdiction, – 12(b)(6) – failure to state a claim upon which relief can be granted, – and §§ 2, 3 and 4 of the FAA, a statutory method for raising the arbitration defense.

The defense of lack of subject matter jurisdiction may be asserted at any time.  See Fed. R. Civ. P. 12(h)(3).  The defense of failure to state a claim upon which relief can be granted may be made in a pleading permitted or ordered under FRCP Rule 7(a) – *i.e.*, an answer, – by motion for judgment on the pleadings under FRCP 12(c), or at a trial on the merits.  See Fed. R. Civ. P. 12(h)(2); Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001); Goodman v. Merrill Lynch & Co., Inc., 716 F. Supp. 2d 253, 258 (S.D.N.Y. 2010); see also Agrashell, Inc. v. Composition Materials Co., 40 F.R.D. 395, 397 (S.D.N.Y. 1966).

Finally, District Courts are required to send a dispute to arbitration regardless of the validity of any procedural defenses such as untimeliness so long as the existence of an arbitration agreement and a party's refusal to arbitrate is undisputed.  See Conticommodity Servs. Inc. v. Philipp & Lion, 613 F.2d 1222 (2d Cir. 1980) (holding that since the existence of an arbitration agreement between the parties was undisputed, as was one of the party's refusal to arbitrate, the district court was required to send the dispute to arbitration regardless of validity of any procedural defenses such as untimeliness, etc.); Bechtel do Brasil Construcoes Ltda. v. UEG Araucaria Ltda., 638 F.3d 150 (2d Cir. 2011) (holding that while contracts expressly provided that New York law governed arbitration procedure and administration, they made no mention of timeliness disputes or of any right of parties to *resort to courts in any circumstances*, and as contracts between parties were ambiguous as to whether timeliness disputes could be decided by court, such ambiguities were to be resolved in favor of arbitration) (emphasis added); see also PaineWebber Inc. v. Faragalli, 61 F.3d 1063 (3d Cir. 1995) (holding that former employer had not waived contractual

right to arbitrate dispute with former employee by untimely assertion; arbitration demand was made within two months of date that employee filed complaint in state court, before there was any discovery or briefing on merits.).

Accordingly, Defendants undoubtedly did not waive their defense pursuant to FRCP Rule 12(b)(1), as Defendants can raise this defense at any time. Defendants furthermore did not waive their defense pursuant to FRCP Rule 12(b)(6) because an answer has not yet been filed. Finally, pursuant to the FAA and binding precedent, this Court must submit this dispute to arbitration regardless of any procedural deficiencies – even if valid.

As such, Defendants have not waived their arbitration defense.

## V.       CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss the action in its entirety with prejudice.

Dated:    Lake Success, New York
          January 2, 2015

                                        MILMAN LABUDA LAW GROUP, PLLC


                                        By:   /s   Joseph M. Labuda, Esq._____
                                        Joseph M. Labuda, Esq.
                                        Matthew A. Brown, Esq.
                                        Emanuel Kataev, Esq.
                                        3000 Marcus Avenue, Suite 3W8
                                        Lake Success, NY 11042-1073
                                        (516) 328-8899 (office)
                                        (516) 328-0082 (facsimile)
                                        joe@mllaborlaw.com
                                        matt@mllaborlaw.com
                                        emanuel@mllaborlaw.com

                                        *Attorneys for Defendants*