**JACOB ARONAUER, ESQ.**
Law Offices of Jacob Aronauer
225 Broadway, 3rd Floor
New York, New York 10007
(212) 323-6980
jaronauer@aronauerlaw.com

September 11, 2018

**Via ECF**
Hon. Colleen McMahon
United States District Court
Southern District Court of New York
500 Pearl Street, Room 2550
New York, New York 10007

Re: Victorio et al. v. Sammy's Fishbox Realty Co., et al.
    14-cv-08678 (CM)

Dear Judge McMahon:

I am co-counsel to the Plaintiffs in the above captioned matter. The parties jointly request that the Court confirm the consent awards by Arbitrator Janet Spencer. The consent awards are annexed hereto as Exhibit A. This consent award was entered into after the parties settled the above captioned matter. Plaintiffs and Defendants have signed the respective settlement agreements.

This matter was initially filed on October 30, 2014 (dkt 001). On May 6, 2015, the Court found the arbitration agreement enforceable and remanded the case to arbitration (dkt 110). Shortly thereafter, Plaintiffs counsel filed an action at the American Arbitration Association ("AAA"). At AAA, the parties engaged in paper discovery and all relevant parties were deposed. At the conclusion of discovery, the parties had a settlement conference before AAA mediator Rosemary Townley. Approximately 10 days after the settlement conference, the parties reached a settlement in principle.

We thank the Court for its consideration.

Respectfully,

Jacob Aronauer
*Attorney for Plaintiffs*

**Via ECF**
*All Attorneys on record*

# EXHIBIT A

------------------------------------------------------------X

In the Matter of the Arbitration

    - between -

GUALBERTO VICTORIO et al,          **CONSENT AWARD**
Claimants

    -and-

SEA SHORE RESTAURANT CORPORATION, et al,    Case No. 02-15-0003-9540
Respondents

------------------------------------------------------------X

BEFORE:    Janet Maleson Spencer, Esq.
           Arbitrator

WHEREAS, pursuant to the Rules of the American Arbitration Association, the undersigned arbitrator was designated on or about November 9, 2015 to hear and determine the dispute, and

WHEREAS, the parties engaged in extensive discovery, and scheduled ten days of hearing to be convened during the weeks of June 11 and June 18, 2018, and

WHEREAS, prior to convening for such hearings, the parties settled their dispute amicably, and agreed that the terms of their settlement would be memorialized in a Consent Award,

I, accordingly, hereby issue the following settlement agreement, denominated by the parties " FLSA Settlement Agreement and Release" and "Settlement Agreement and General Release" as my

**CONSENT AWARD**

Dated: Sept 3, 2018

Arbitrator Janet Spencer

## FLSA SETTLEMENT AGREEMENT AND RELEASE

This is a Settlement Agreement and Release (hereinafter the "Agreement") between Seashore Restaurant Corp., Sammy's S.B. Rest. Corp., Samuel Chernin, and John Arminio, on the one hand (together, the "Company"), and Gualberto Victorio, Pascual Vite Rojas, Danny Cerna, Francisco Cortez, Juan Salas, Rodrigo Garcia, Lazaro Romano Cabrero, Idelfonso Gil Rodriguez, Selvyn Mendez Veliz, Jose Cordero, Vicente Balbuena, Julio Ybaceta, Edgar Sanchez Perez, and Alexander Jaimes Huerta (collectively hereinafter the "Claimants"), on the other hand. The Company and the Claimants may each be referred to as a "Party," or together, be referred to herein as the "Parties."

WHEREAS, a dispute arose between the Parties related to the Claimants' employment with the Company and the terms and conditions thereof; and

WHEREAS, Claimants have commenced an action against the Company in the United States District Court for the Southern District of New York (hereinafter the "Court") styled as Victorio, *et al.* v. Sammy's Fishbox Realty Co., LLC, *et al.*, Case No.: 1:14-cv-8678 (CM) (AJP) (hereinafter the "Lawsuit"), alleging wage and hour violations under the Fair Labor Standards Act (hereinafter "FLSA") and the New York Labor Law (hereinafter "NYLL");

WHEREAS, the Hon. Colleen McMahon, United States District Judge, stayed the Lawsuit and compelled Claimants to arbitrate their claims;

WHEREAS, Claimants demanded arbitration against the Company before the American Arbitration Association styled as Victorio, *et al.* v. Sea Shore Restaurant Corp., *et al.*, Case No.: 02-15-0003-9540 (hereinafter the "Arbitration");

WHEREAS, the Company has denied any and all allegations of wrongdoing asserted by the Claimants;

WHEREAS, the Company and the Claimants desire to fully and finally resolve all differences between them.

NOW THEREFORE, in consideration of the mutual promises of the Parties, the receipt and sufficiency of which the Parties hereby acknowledge, the Parties intending to be bound, do hereby agree as follows:

1.    **Consideration.** In consideration for the Claimants' execution, compliance with, and non-revocation of this Agreement, the Company agrees to pay the Claimants and their Counsel amounts to which they are not otherwise entitled in the total gross amount of Three Hundred Thousand and 00/100 Dollars ($300,000.00) ("Settlement Payment").

   a.    The Settlement Payment shall be made on the schedule as provided for in Schedule A.

b.      The Parties agree that fifty percent (50%) of all monies paid to Claimants (as opposed to their Counsel) shall constitute wages, for which an IRS Form W-2 shall be issued and the remaining fifty percent (50%) shall constitute liquidated damages and interest, for which an IRS Form 1099 shall be issued. Claimants shall receive from the Company, and the Company shall file with the Internal Revenue Service, a Form W-2 and a Form 1099 reflecting payments to the Claimants of that portion of the Settlement Payment designated as wages or liquidated damages and interest, respectively, which was received by them in the prior calendar year. Each Claimant shall be responsible to pay all Federal, State and local taxes, if any, in connection with that portion of the Settlement Payment designated as liquidated damages which was received by them. Claimants' counsel shall provide to the Company's counsel a current address for each Claimant for purposes of mailing IRS Forms W-2 and 1099 as described above. Any Claimant for whom the Company does not have social security information or a TIN number agrees to provide a social security or tax ID number in a W-4/W-9 for the applicable sums they will receive under this Agreement. If a Claimant does not provide a social security or tax ID number, the Company shall make back-up withholdings in accordance with the law.

c.      The Claimants agree and affirm that the Settlement Payment and the payment referenced in a separate agreement entered into between the parties concerning Claimants' claims unrelated to wages shall constitute the entire amount of monetary consideration provided to them and their legal counsel, and that Claimants will not seek any further compensation for any other claimed unpaid wages, wage supplements, injuries, damages, costs, disbursements, or attorneys' fees in connection with any of the matters encompassed in this Agreement or any aspect of the Claimants' relationship with the Company. Claimants agree, affirm, and acknowledge that they have been paid all wages and wage supplements and all other amounts owed to them for any reason by the Company.

d.      Claimants further agree that they shall be responsible for payment of all personal taxes that may be due as a result of the Settlement Payment. Claimants understand and agree that no representation is made by or on behalf of the Company regarding tax obligations or consequences that may arise from this Agreement. Further, each Claimant agrees to indemnify and hold harmless the Company from and against all liens, liabilities, interest, and penalties that may be assessed against or incurred by it as a result of not deducting taxes or other withholdings or satisfying any liens or judgments against that Claimant on the Settlement Payment.

e.      Company will issue a 1099 form to Claimants' Counsel representing the amount of attorneys' fees paid to Claimants' Counsel by the Company. Claimants' attorneys shall be solely responsible for the payment of any taxes owed on the Payment. Claimants represent that no tax advice has been given to them by Released Parties or their representatives and they understand that Released Parties make no representation or guarantee as to the tax consequences of these payments.

3.      **Limited Release of All Fair Labor Standards Act Claims by Plaintiff.**

a. Release of Fair Labor Standards Acts Claims.   Claimants knowingly and voluntarily release and forever discharge Released Parties of and from any and all claims of any kind or nature, whether known or unknown, asserted or unasserted, arising up to and as of the date of the execution of this Agreement under the Fair Labor Standards Act ("FLSA"), which

Claimants have or may have against the Company, and also covenant not to file any claim or suit alleging a violation of the FLSA against the Company and its insurers, past and present contractors, officers, directors, attorneys, agents, servants, representatives, employees, partners, owners, shareholders, members, predecessors and successors in interest and assigns and affiliates.

b.  This release and waiver of claims shall not be construed to impair the Claimants' respective rights to enforce the terms of this Agreement and does not include any claim which, as a matter of law, cannot be released by private agreement.  Nor does this release prohibit or bar Claimants from providing truthful testimony in any legal proceeding or from cooperating with, or making truthful disclosures to, any local, state, or federal governmental agency, or filing a timely charge or complaint with the EEOC, or participating in any investigation or proceeding conducted by the EEOC regarding any claim of employment discrimination.  Notwithstanding the foregoing, with respect to any claim that cannot be released by private agreement, Claimants agree to release and waive and hereby do release and waive their right (if any) to any monetary damages or other recovery as to such claims, including any claims brought on any Claimant's behalf, either individually or as part of a collective action, by any governmental agency or other third party.

4.  **Claimants' Representations and Warranties**.  Claimants hereby each represent, warrant, acknowledge, and affirm as follows, solely as to themselves:

a.  that he has not filed or permitted anyone to file on his behalf, any complaints, charges or claims for relief against the Company with any local, state or federal court or administrative agency other than the Lawsuit or the Arbitration;

b.  that he has been paid and has received all compensation, wages, overtime payments, wage supplements, bonuses, commissions, leave, paid and unpaid, paid time off and benefits to which  he may be due for any reason, except as provided in this Agreement; and

c.  that he has no known workplace injuries or occupational diseases and has been provided and/or has not been denied any leave requested under the Family and Medical Leave Act (hereinafter the "FMLA").

d.  that he shall cause the Lawsuit and the Arbitration to be dismissed with prejudice in accordance with this Agreement.

5.  **Non-Admission of Wrongdoing.**  The Company denies each and every allegation of wrongdoing, including, but not limited to, the allegations and statements contained in the pleadings, proceeding, documents, or statements whatsoever by or on behalf of Claimants against Released Parties.  Neither the making of this Agreement nor anything contained herein shall be construed or considered in any way to be an admission by the Company of guilt or noncompliance with any federal, state or local statute, order, regulation or ordinance, public

policy, tort law, contract (whether oral or written, express or implied), common law, the Company's policies, practices, benefit plans, compensation plans or procedures, or of any other wrongdoing whatsoever.

6.    **Mutual Non-Disparagement.**  Each Claimant and each Respondent agrees that they shall not, directly or indirectly, at any time, make any statement (whether written, oral, electronic, or otherwise) or otherwise take any action that would or might reasonably be interpreted as harmful or disparaging to any of the Parties. For purposes of the preceding sentence, "disparaging" shall mean any statement or communication, whether verbal or written, that would tend to lessen the stature or standing of the Company in the eyes of an ordinary and reasonable person in the community, but will not preclude the Parties from making good faith statements in the context of any judicial, administrative, arbitration, mediation or other legal proceeding.

7.    **Response to Inquiries on Employment.**  If a prospective employer of any Claimant contacts the Company seeking an employment reference, the Company will only provide the Claimant's dates of employment and his position held with the Company.

8.    **Breach of Agreement.**  Breach of any of the provisions of this Agreement by any Party to this Agreement shall be deemed a material breach as to that party only. In the event of any such breach incurred as to that party only, the non-breaching Party shall be entitled to recover money from the breaching party already paid to him and reasonable attorneys' fees incurred in obtaining that money and costs and injunctive relief, if so determined by a court of competent jurisdiction.

9.    **Default.**  The Corporate Respondents and Respondent Samuel Chernin shall execute herewith the affidavits of confession of judgment attached hereto as Exhibit A for the entire amount of the Settlement Payment, less any payments made, and a fifty percent (50%) penalty, plus attorneys' fees. In the event of a default, any Claimant and/their Counsel may enter the confession of judgment in state supreme court, Bronx county. Claimants are first required to provide notice via e-mail to the Company's counsel and to give Respondents a fourteen (14) day opportunity to cure prior to filing any such affidavit.

10.    **Severability and Modification**.  If any provision of this Agreement is declared illegal or unenforceable by any court, administrative agency or other entity, the court, administrative agency or other entity has the full authority to interpret or modify all such provisions to be enforceable and is directed to do so. If such interpretation or modification is not possible, such provision immediately shall become null and void, leaving the remainder of this Agreement in full force and effect.

11.    **Non-Waiver.**  No waiver of any breach of any term or provision of this Agreement shall be construed to be, or shall be, a waiver of any other breach of this Agreement. No waiver shall be binding unless in writing and signed by the Party waiving the breach. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, successors, and permitted assigns. The Company may assign this Agreement without notice in its sole discretion.

12.     **Headings.** The headings in this Agreement are for the convenience of the Parties and are not intended to modify the terms of the Agreement.

13.     **Multiple Counterparts.** This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which together shall constitute one and the same instrument. Faxed and e-mailed scanned copies shall be effective and enforceable.

14.     **Representation by Counsel and Entire Agreement**. This Agreement sets forth the entire agreement between the Parties hereto as to the Claimants' FLSA claims, and fully supersedes any and all prior discussions, agreements or understandings between the Parties. The Parties agree that this Agreement was drafted jointly by the Parties, and therefore shall be construed according to its fair meaning, and not strictly for or against any of the Parties. Should any provision of the Agreement be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and the illegal or invalid part, term or provision shall be deemed not to be a part of the Agreement. This Agreement shall survive the cessation or termination of any arrangements contained herein.

15.     **Medicare/Medicaid**. Each Claimant affirms he is not a Medicare or Medicaid Beneficiary (defined as any claimant for whom Medicare has paid Conditional Payments for the treatment of injuries arising out of or related to the Released Matters) as of the date of this Agreement and no conditional payment has been made to or in his behalf by Medicare or Medicaid; and, each Claimant represents that he is not enrolled in a Medicare program and was not enrolled at the time of his employment or anytime thereafter through the date of this Agreement. Each Claimant further represents and warrants that no Medicaid payments have been made to or on behalf of him and that no liens, claims, demands, subrogated interests, or causes of action of any nature or character exist or have been asserted arising from his employment with the Company. Each Claimant further agrees that he, and not the Company, shall be responsible for satisfying all such liens, claims, demands, subrogated interests, or causes of action that may exist or have been asserted or that may in the future exist or be asserted.

16.     **Applicable Law.** This Agreement shall be governed by and interpreted in accordance with the laws of the State of New York.

17.     **Voluntary Agreement.** By signing in the space provided below, each Claimant agrees and affirms that:

        a.     This Agreement is legally binding, and by signing it, each Claimant understands that he is giving up certain rights, including his right to pursue any claims against the Releasees from the beginning of time until the date of this Agreement;

        b.     No promise or representation of any kind or character has been made by the Company or by anyone acting on its behalf to induce any Claimant to

enter into this Agreement, and no Claimant has been forced or pressured in any way to sign this Agreement; and

c.  Through this Agreement, each Claimant is releasing all of the Releasees from any and all wage and hour claims that he may have against the Company in exchange for the Settlement Payment described herein;

d.  Each Claimant knowingly and voluntarily agrees to all of the terms set forth in this Agreement, and intends to be legally bound by them.

18.  **Arbitration Award and Dismissal with Prejudice.**  The Parties agree to request Arbitrator Spencer issue a Consent Award which the Parties shall submit to Judge Colleen McMahon, SDNY for dismissal of case with prejudice.

SO ORDERED

**/Janet M. Spencer, Esq./**
**Janet M. Spencer, Esq., Arbitrator**

**SEASHORE RESTAURANT CORP.**

By:_____          DATE: ____/____/____
   **Samuel Chernin**
**Its: President**

**SAMMY'S S.B. REST. CORP.**

By:_____          DATE: ____/____/____
   **Samuel Chernin**
**Its: President**

_____          DATE: ____/____/____
**Samuel Chernin**

_____          DATE: ____/____/____
**John Arminio**

_____          DATE: ____/____/____
**Gualberto Victorio**

STATE OF NEW YORK   )
                   ) ss.:
COUNTY OF          )

     On the ____ day of _____, 2018 before me personally appeared Gualberto Victorio personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and that by his signature on the instrument, the individual executed the instrument and that such individual made such appearance before the undersigned.

_____
NOTARY PUBLIC

_____          DATE: ____/____/____
**Pascual Vite Rojas**

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF            )

On the ____ day of _____, 2018 before me personally appeared Pascual Vite Rojas personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and that by his signature on the instrument, the individual executed the instrument and that such individual made such appearance before the undersigned.

NOTARY PUBLIC

DATE: ____ / ____ / _____

**Danny Cerna**

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF            )

On the ____ day of _____, 2018 before me personally appeared Danny Cerna personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and that by his signature on the instrument, the individual executed the instrument and that such individual made such appearance before the undersigned.

NOTARY PUBLIC

DATE: ____ / ____ / _____

**Francisco Cortez**

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF            )

On the ____ day of _____, 2018 before me personally appeared Francisco Cortez personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and that by his signature on the instrument, the individual executed the instrument and that such individual made such appearance before the undersigned.

NOTARY PUBLIC

_____          DATE: _____ / _____ / _____
**Juan Salas**

STATE OF NEW YORK     )
                      ) ss.:
COUNTY OF             )

      On the _____ day of _____, 2018 before me personally appeared Juan Salas personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and that by his signature on the instrument, the individual executed the instrument and that such individual made such appearance before the undersigned.

                                            _____
                                            NOTARY PUBLIC

_____          DATE: _____ / _____ / _____
**Rodrigo Garcia**

STATE OF NEW YORK     )
                      ) ss.:
COUNTY OF             )

      On the _____ day of _____, 2018 before me personally appeared Rodrigo Garcia personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and that by his signature on the instrument, the individual executed the instrument and that such individual made such appearance before the undersigned.

                                            _____
                                            NOTARY PUBLIC

_____          DATE: _____ / _____ / _____
**Lazaro Romano Cabrero**

STATE OF NEW YORK     )
                      ) ss.:
COUNTY OF             )

      On the _____ day of _____, 2018 before me personally appeared Lazaro Romano Cabrero personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and that by his signature on the instrument, the individual executed the instrument and that such individual made such appearance before the undersigned.

_____

NOTARY PUBLIC

DATE: ____ / ____ / ____

_____

**Idelfonso Gil Rodriguez**

STATE OF NEW YORK    )
                                        ) ss.:
COUNTY OF                   )

     On the ____ day of _____, 2018 before me personally appeared Idelfonso Gil Rodriguez personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and that by his signature on the instrument, the individual executed the instrument and that such individual made such appearance before the undersigned.

_____

NOTARY PUBLIC

DATE: ____ / ____ / ____

_____

**Selvyn Mendez Veliz**

STATE OF NEW YORK    )
                                        ) ss.:
COUNTY OF                   )

     On the ____ day of _____, 2018 before me personally appeared Selvyn Mendez Veliz personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and that by his signature on the instrument, the individual executed the instrument and that such individual made such appearance before the undersigned.

_____

NOTARY PUBLIC

DATE: ____ / ____ / ____

_____

**Jose Cordero**

STATE OF NEW YORK    )
                                        ) ss.:
COUNTY OF                   )

     On the ____ day of _____, 2018 before me personally appeared Jose Cordero personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and that by his signature on the instrument,

the individual executed the instrument and that such individual made such appearance before the
undersigned.

_____
NOTARY PUBLIC

DATE: ____/_____/_____

_____
**Vicente Balbuena**

STATE OF NEW YORK )
                   ) ss.:
COUNTY OF          )

     On the _____ day of _____, 2018 before me personally appeared Vicente Balbuena
personally known to me or proved to me on the basis of satisfactory evidence to be the individual
whose name is subscribed to the within instrument and that by his signature on the instrument,
the individual executed the instrument and that such individual made such appearance before the
undersigned.

_____
NOTARY PUBLIC

DATE: ____/_____/_____

_____
**Julio Ybaceta**

STATE OF NEW YORK )
                   ) ss.:
COUNTY OF          )

     On the _____ day of _____, 2018 before me personally appeared Julio Ybaceta
personally known to me or proved to me on the basis of satisfactory evidence to be the individual
whose name is subscribed to the within instrument and that by his signature on the instrument,
the individual executed the instrument and that such individual made such appearance before the
undersigned.

_____
NOTARY PUBLIC

DATE: ____/_____/_____

_____
**Edgar Sanchez Perez**

STATE OF NEW YORK   )
                           ) ss.:
COUNTY OF             )

On the _____ day of _____, 2018 before me personally appeared Edgar Sanchez Perez personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and that by his signature on the instrument, the individual executed the instrument and that such individual made such appearance before the undersigned.

_____
NOTARY PUBLIC

DATE: _____ / _____ / _____

_____
**Alexander Jaimes Huerta**

STATE OF NEW YORK   )
                           ) ss.:
COUNTY OF             )

On the _____ day of _____, 2018 before me personally appeared Alexander Jaimes personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and that by his signature on the instrument, the individual executed the instrument and that such individual made such appearance before the undersigned.

_____
NOTARY PUBLIC

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This is a Settlement Agreement and Release (hereinafter the "Agreement") between Seashore Restaurant Corp., Sammy's S.B. Rest. Corp., Samuel Chernin, and John Arminio, on the one hand (together, the "Company"), and Gualberto Victorio, Pascual Vite Rojas, Danny Cerna, Francisco Cortez, Juan Salas, Rodrigo Garcia, Lazaro Romano Cabrero, Idelfonso Gil Rodriguez, Selvyn Mendez Veliz, Jose Cordero, Vicente Balbuena, Julio Ybaceta, Edgar Sanchez Perez, and Alexander Jaimes Huerta (collectively hereinafter the "Claimants"), on the other hand. The Company and the Claimants may each be referred to as a "Party," or together, be referred to herein as the "Parties."

WHEREAS, a dispute arose between the Parties related to the Claimants' employment with the Company and the terms and conditions thereof; and

WHEREAS, Claimants have commenced an action against the Company in the United States District Court for the Southern District of New York (hereinafter the "Court") styled as Victorio, *et al.* v. Sammy's Fishbox Realty Co., LLC, *et al.*, Case No.: 1:14-cv-8678 (CM) (AJP) (hereinafter the "Lawsuit"), alleging wage and hour violations under the Fair Labor Standards Act (hereinafter "FLSA") and the New York Labor Law (hereinafter "NYLL");

WHEREAS, the Hon. Colleen McMahon, United States District Judge, stayed the Lawsuit and compelled Claimants to arbitrate their claims;

WHEREAS, Claimants demanded arbitration against the Company before the American Arbitration Association styled as Victorio, *et al.* v. Sea Shore Restaurant Corp., *et al.*, Case No.: 02-15-0003-9540 (hereinafter the "Arbitration");

WHEREAS, the Company has denied any and all allegations of wrongdoing asserted by the Claimants;

WHEREAS, the Company and the Claimants desire to fully and finally resolve all differences between them.

NOW THEREFORE, in consideration of the mutual promises of the Parties, the receipt and sufficiency of which the Parties hereby acknowledge, the Parties intending to be bound, do hereby agree as follows:

19. **Consideration.** In consideration for the Claimants' execution, compliance with, and non-revocation of this Agreement, the Company agrees to pay the Claimants and their Counsel amounts to which they are not otherwise entitled in the total gross amount of Seventy-Five Thousand and 00/100 Dollars ($75,000.00) ("Settlement Payment").

a. The Settlement Payment shall be made on a schedule as provided for in Schedule A.

b.     The Parties agree that fifty percent (50%) of all monies paid to Claimants shall constitute wages, for which an IRS Form W-2 shall be issued and the remaining fifty percent (50%) shall constitute liquidated damages and interest, for which an IRS Form 1099 shall be issued. Claimants shall receive from the Company, and the Company shall file with the Internal Revenue Service, a Form W-2 and a Form 1099 reflecting payments to the Claimants of that portion of the Settlement Payment designated as wages or liquidated damages and interest, respectively, which was received by them in the prior calendar year. Each Claimant shall be responsible to pay all Federal, State and local taxes, if any, in connection with that portion of the Settlement Payment designated as liquidated damages which was received by them. Claimants' counsel shall provide to the Company's counsel a current address for each Claimant for purposes of mailing IRS Forms W-2 and 1099 as described above. Any Claimant for whom the Company does not have social security information or a TIN number agrees to provide a social security or tax ID number in a W-4/W-9 for the applicable sums they will receive under this Agreement. If a Claimant does not provide a social security or tax ID number, the Company shall make back-up withholdings in accordance with the law.

c.     The Claimants agree and affirm that the Settlement Payment and the monies to be paid pursuant to a separate agreement concerning their Fair Labor Standards Act claims shall constitute the entire amount of monetary consideration provided to them and their legal counsel under this Agreement  and that Claimants will not seek any further compensation for any other claimed unpaid wages, wage supplements, injuries, damages, costs, disbursements, or attorneys' fees in connection with any of the matters encompassed in this Agreement or any aspect of the Claimants' relationship with the Company.    Claimants agree, affirm, and acknowledge that they have been paid all wages and wage supplements and all other amounts owed to them for any reason by the Company.

d.     Claimants further agree that they shall be responsible for payment of all personal taxes that may be due as a result of the Settlement Payment. Claimants understand and agree that no representation is made by or on behalf of the Company regarding tax obligations or consequences that may arise from this Agreement.  Further, each Claimant agrees to indemnify and hold harmless the Company from and against all liens, liabilities, interest, and penalties that may be assessed against or incurred by it as a result of not deducting taxes or other withholdings or satisfying any liens or judgments against that Claimant on the Settlement Payment.

e.     Company will issue a 1099 form to Claimants' Counsel representing the amount of attorneys' fees paid to Claimants' Counsel by the Company. Claimants' attorneys shall be solely responsible for the payment of any taxes owed on the Payment. Claimants represent that no tax advice has been given to them by Released Parties or their representatives and they understand that Released Parties make no representation or guarantee as to the tax consequences of these payments. Claimants each hereby agree to indemnify and hold harmless Released Parties in connection with any tax liabilities and/or interest, penalties, or costs that may be incurred by that Claimant for any failure by him to properly report the payment.

20.     **Release of Claims**

a.   General Release of Claims.   Claimants and their respective successors and assigns knowingly and voluntarily release and forever discharge the Company and its present or former parent corporations, subsidiaries, divisions, affiliated entities, predecessors, consultants, insurers, reinsurers, successors and assigns, and their current and former employees, attorneys, officers, board members, directors and agents thereof, both individually and in their business capacities, and any otherwise related persons or entities of and from any and all claims of any kind or nature, whether known or unknown, asserted or unasserted, arising up to and as of the date of the execution of this Agreement, and also covenant not to file any claim or suit and generally and fully waives all claims against the Company, including, but not limited to, the claims contained in the pleadings for the Lawsuit and the Arbitration, and any alleged violation of:

- The Age Discrimination in Employment Act of 1967;
- Sections 1981 through 1988 of Title 42 of the United States Code;
- Title VII of the Civil Rights Act of 1964;
- The Employee Retirement Income Security Act of 1974;
- The Sarbanes-Oxley Act of 2002;
- The Immigration Reform and Control Act;
- The Americans with Disabilities Act of 1990;
- The National Labor Relations Act;
- The Equal Pay Act;
- The Workers Adjustment and Retraining Notification Act;
- The Occupational Safety and Health Act;
- The Fair Credit Reporting Act;
- The Family and Medical Leave Act of 1993;
- The False Claims Act;
- The New York Correction Law, including Sections 750-755 thereof;
- The New York State Executive Law (including its Human Rights Law);
- The New York City Human Rights Law;
- The New York State Labor Law;
- The New York False Claims Act;
- The New York wage, wage-payment, wage theft and wage-hour laws;
- Any local or county law, rule or requirement of any kind;
- Any other federal, state or local human rights, discrimination, retaliation, civil rights, benefits, pension, whistleblower, labor, *qui tam* or any other federal, state or local constitution, law, rule, regulation, or ordinance of any kind;
- Any benefit, payroll or other plan, policy or program;
- Any public policy, contract (whether oral or written, express or implied), tort (whether intentional, negligent or otherwise), or common law;
- Any amendments to the foregoing laws; and,
- Any claim for costs, fees, or other expenses, including, but not limited to, a claim for attorneys' fees or costs.

b.   Claims Not Released by Claimants.   Claimants are not waiving any rights they may have to: (a) pursue claims which by law cannot be waived by signing this Agreement; and/or (b) enforce this Agreement. However, all monies paid hereunder shall be set off against any claim not barred by this Agreement.

c.   Governmental Agencies.   Nothing in this Agreement prohibits or prevents Claimants from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower

proceeding or other proceeding before any federal, state, or local government agency. However, to the maximum extent permitted by law, Claimants agree that if such an administrative claim is made, they shall not be entitled to recover any individual monetary relief or other individual remedies (and all monies paid hereunder shall be a set-off against any relief or recovery).

      d.      Collective/Class Action Waiver.  Claimants waive any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which the Company, jointly or severally, is a party.  In the event any class or collective action is brought against the Company, jointly or severally, which includes or may include any of the Claimants, upon learning of any such Claimant's inclusion, the Claimant(s) shall immediately withdraw therefrom without obtaining or accepting any relief or recovery.

      e.      Specific Release of ADEA and OWBPA Claims.  In further consideration of the benefits provided to Claimants in this Agreement, including but not limited to the Settlement Payment, Claimants hereby irrevocably and unconditionally fully and forever waive, release, and discharge the Company from any and all claims, whether known or unknown, from the beginning of time to the date of Claimants' execution of this Agreement arising under the Older Workers' Benefit Protection Act (OWBPA) and the Age Discrimination in Employment Act (ADEA), as amended, and its implementing regulations.  By signing this Agreement, the Claimants hereby acknowledge and confirm that they each: (i) have read this Agreement in its entirety and understand all of its terms; (ii) have been advised of and availed themselves of their right to consult with an attorney prior to executing this Agreement; (iii) knowingly, freely, and voluntarily assent to all of the terms and conditions set out in this Agreement including, without limitation, the waiver, release, and covenants contained herein; (iv) are executing this Agreement, including the waiver and release, in exchange for good and valuable consideration in addition to anything of value to which they are otherwise entitled; (v) were given at least twenty-one (21) days to consider the terms of this Agreement and consult with an attorney of their choice, although they may sign it sooner if desired; (vi) understand that they have seven (7) days from the date they sign this Agreement to revoke the release in this paragraph by delivering notice of revocation to Emanuel Kataev, Esq. at 3000 Marcus Avenue, Suite 3W8, Lake Success, NY 11042-1073 by overnight delivery before the end of such seven (7) day period; (vii) understand that the release contained in this paragraph does not apply to rights and claims that may arise after the date on which they sign this Agreement; and (viii) in entering into this Agreement, agree and acknowledge that they are not relying on any representation, promise, or inducement made by the Company or its attorneys with the exception of those promises described in this Agreement.

      f.      Claimants acknowledge that they may discover facts or law different from, or in addition to, the facts or law they know or believe to exist with respect to their released claims.  They each agree, nonetheless, that this Agreement and the release contained in it shall be and remain effective in all respects notwithstanding such different or additional facts or law.

      g.      This release and waiver of claims shall not be construed to impair the Claimants' respective rights to enforce the terms of this Agreement and does not include any claim which, as a matter of law, cannot be released by private agreement.  Nor does this release prohibit or bar Claimants from providing truthful testimony in any legal proceeding or from cooperating with, or making truthful disclosures to, any local, state, or federal governmental agency, or filing a timely charge or complaint with the EEOC, or participating in any investigation or proceeding conducted by the EEOC regarding any claim of employment discrimination. Notwithstanding the foregoing, with respect to any claim that cannot be released by private agreement, Claimants agree to release and waive and hereby do release and waive their right (if any) to any monetary damages or other recovery as to such claims, including any claims brought on any Claimant's behalf, either individually or as part of a collective action, by any governmental agency or other third party.

      h.      This release and waiver of claims shall not be construed to impair the Claimants' respective rights to enforce the terms of this Agreement and does not include any claim which, as a matter of law, cannot be released by private agreement.  Nor does this release prohibit or bar Claimants from providing truthful testimony in any legal proceeding or from cooperating with, or making truthful disclosures to, any local, state, or federal governmental agency, or filing a timely charge or complaint with the EEOC, or participating in any investigation or proceeding conducted by the EEOC regarding any claim of employment discrimination.

Notwithstanding the foregoing, with respect to any claim that cannot be released by private agreement, Claimants agree to release and waive and hereby do release and waive their right (if any) to any monetary damages or other recovery as to such claims, including any claims brought on any Claimant's behalf, either individually or as part of a collective action, by any governmental agency or other third party.

21.    **Confidentiality.**

(a)    Claimants shall not, except as compelled by law, publicize or disclose to any person or entity any allegations of unlawful conduct by Released Parties or the terms of this Agreement.  This covenant of confidentiality includes, but is not limited to, the claims of unlawful conduct asserted in the pleadings, the terms of this Agreement, and Claimants' receipt of the Payment hereunder.  Other than as required by law or governmental agency, no such disclosure will be made to anyone by Claimants other than to discuss the terms hereof with their current attorneys, spouse, or tax advisor (all of whom must first agree not to make any disclosure Claimants themselves could not make).

(b)    Each Claimant affirms that, as of the date of execution hereof, he has not told any current or former employees of Released Parties about the terms, conditions, or amount to be paid under this Agreement and covenants not to do so.

(c)    The Company affirms that as of the date of execution hereof, they do not believe that any Claimant has told any current or former employees of Released Parties about the terms, conditions, or amount to be paid under this Agreement.

(d)    Claimants understand and agree that any violation of this covenant of confidentiality, whether by a Claimant or by an individual to whom limited disclosure is authorized pursuant to Paragraph 7(a), shall constitute a material breach of this Agreement as to that Claimant, which will cause Released Parties to suffer immediate, substantial, and irreparable injury and which may be a sufficient basis for an award of injunctive relief (without affecting the remainder of this Agreement).  If it is established that a Claimant breached or caused any breach of this covenant of confidentiality by a court or arbitrator, that Claimant will (i) forfeit any monies due, but unpaid hereunder; (ii) be liable for liquidated damages in the amount of ninety percent (90%) of the amount paid to Claimants hereunder; and (iii) reimburse Released Parties for reasonable attorneys' fees and costs incurred enforcing this provision, (but Claimant shall remain bound by the general and unlimited release of all claims contained herein);

(e)    Claimants shall have the right to recover reasonable attorney fees, along with the unpaid settlement monies, in the event that a trier of fact determines that the Company withheld payments in violation of this Agreement

(f)    In the event any Claimant believes he is compelled by law to provide or disclose information described in this paragraph, notice of such request for disclosure shall be sent promptly (but in no event less than ten (10) business days in advance of any disclosure), via email, to counsel for Released Parties at the following email addresses: emanuel@mllaborlaw.com and joe@mllaborlaw.com.

22.     **Claimants' Representations and Warranties**.   Each Claimant hereby represents, warrants, acknowledges, and affirms as follows:

      a.     that they have not filed or permitted anyone to file on their behalf, any complaints, charges or claims for relief against the Company with any local, state or federal court or administrative agency other than the Lawsuit or the Arbitration;

      b.     that they have been paid and have received all compensation, wages, overtime payments, wage supplements, bonuses, commissions, leave, paid and unpaid, paid time off and benefits to which they may be due for any reason, except as provided in this Agreement; and

      c.     that they have no known workplace injuries or occupational diseases and have been provided and/or have not been denied any leave requested under the Family and Medical Leave Act (hereinafter the "FMLA").

      d.     that they shall cause the Lawsuit and the Arbitration to be dismissed with prejudice.

      e.     Claimants acknowledge that each of them, respectively, do not wish to hold any position with the Company, now or in the future and, therefore, shall not apply in the future for employment with the Company. Any Claimant who is currently employed by the Company agrees to resign from the Company upon receipt of his respective portion of the Settlement Payment.

      f.     Claimants understand that this Agreement is not valid unless and until both the Lawsuit and the Arbitration are dismissed with prejudice.

23.     **Non-Admission of Wrongdoing**.  The Company denies each and every allegation of wrongdoing, including, but not limited to, the allegations and statements contained in the pleadings, proceeding, documents, or statements whatsoever by or on behalf of Claimants against Released Parties. Neither the making of this Agreement nor anything contained herein shall be construed or considered in any way to be an admission by the Company of guilt or noncompliance with any federal, state or local statute, order, regulation or ordinance, public policy, tort law, contract (whether oral or written, express or implied), common law, the Company's policies, practices, benefit plans, compensation plans or procedures, or of any other wrongdoing whatsoever.

24.     **Mutual Non-Disparagement**.  Each Claimant and each Individual Respondent agrees that they each shall not, directly or indirectly, at any time, make any statement (whether written, oral, electronic, or otherwise) or otherwise take any action that would or might reasonably be interpreted as harmful or disparaging to any of the Parties. For purposes of the preceding sentence, "disparaging" shall mean any statement or communication, whether verbal or written, that would tend to lessen the stature or standing of the Company in the eyes of an ordinary and reasonable person in the community, but will not preclude the Parties from making good faith statements in the context of any judicial, administrative, arbitration, mediation or other legal proceeding.

25.     **Response to Inquiries on Employment**.  If a prospective employer of any Claimant contacts the Company seeking an employment reference, the Company will only provide the Claimant's dates of employment and his position held with the Company.

26.     **Breach of Agreement.** Breach of any of the provisions of this Agreement by any Party to this Agreement shall be deemed a material breach. In the event of any such breach, the non-breaching Party shall be entitled to recover money already paid, attorneys' fees, costs and injunctive relief, if so determined by a court of competent jurisdiction.

27.     **Default.** The Corporate Respondents and Respondent Samuel Chernin execute herewith the affidavits of confession of judgment for the entire amount of the Settlement Payment less any payments made, and a fifty percent (50%) penalty, plus attorneys' fees. Claimants are required to provide notice via e-mail to the Company's counsel and a fourteen (14) day opportunity to cure prior to filing any such judgment.

28.     **Severability and Modification.** If any provision of this Agreement is declared illegal or unenforceable by any court, administrative agency or other entity, the court, administrative agency or other entity has the full authority to interpret or modify all such provisions to be enforceable and is directed to do so. If such interpretation or modification is not possible, such provision immediately shall become null and void, leaving the remainder of this Agreement in full force and effect. However, if the general and unlimited release of all claims contained herein is limited or held to be null and void, (i) this Agreement shall be interpreted to bar any claim Releasor may assert against Released Parties; (ii) Claimants shall execute an enforceable general and unlimited release of all claims on behalf of Releasor against Released Parties without receiving additional consideration.

29.     **Non-Waiver.** No waiver of any breach of any term or provision of this Agreement shall be construed to be, or shall be, a waiver of any other breach of this Agreement. No waiver shall be binding unless in writing and signed by the Party waiving the breach. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, successors, and permitted assigns. The Company may assign this Agreement without notice in its sole discretion.

30. .   **Headings.** The headings in this Agreement are for the convenience of the Parties and are not intended to modify the terms of the Agreement.

31.     **Multiple Counterparts.** This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which together shall constitute one and the same instrument. Faxed and e-mailed scanned copies shall be effective and enforceable.

32.     **Representation by Counsel and Entire Agreement.** This Agreement sets forth the entire agreement between the Parties hereto as to the Claimants' FLSA claims, and fully supersedes any and all prior discussions, agreements or understandings between the Parties. The Parties agree that this Agreement was drafted jointly by the Parties, and therefore shall be construed according to its fair meaning, and not strictly for or against any of the Parties. Should any provision of the Agreement be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and the illegal or invalid part, term or provision shall be deemed not to be a part of the Agreement. This Agreement shall survive the cessation or termination of any arrangements contained herein.

33.     **Applicable Law.** This Agreement shall be governed by and interpreted in accordance with the laws of the State of New York.

34.     **Voluntary Agreement.** By signing in the space provided below, each Claimant agrees and affirms that:

        a.      This Agreement is legally binding, and by signing it, each Claimant understands that he is giving up certain rights, including his right to pursue any claims against the Releasees from the beginning of time until the date of this Agreement;

        b.      No promise or representation of any kind or character has been made by the Company or by anyone acting on its behalf to induce any Claimant to

enter into this Agreement, and no Claimant has been forced or pressured in any way to sign this Agreement; and

c.   Through this Agreement, each Claimant is releasing all of the Releasees from any and all claims that he may have against the Company in exchange for the Settlement Payment described herein;

d.   Each Claimant knowingly and voluntarily agrees to all of the terms set forth in this Agreement, and intends to be legally bound by them.

35.   **Arbitration Award and Dismissal with Prejudice.**  The Parties agree to request Arbitrator Spencer issue a Consent Award which the Parties shall submit to Judge Colleen McMahon, SDNY for dismissal of case with prejudice.

**SEASHORE RESTAURANT CORP.**

By:_____           DATE: ____/____/____
   **Samuel Chernin**
**Its: President**

**SAMMY'S S.B. REST. CORP.**

By:_____           DATE: ____/____/____
   **Samuel Chernin**
**Its: President**

_____           DATE: ____/____/____
**Samuel Chernin**

_____           DATE: ____/____/____
**John Arminio**

_____           DATE: ____/____/____
**Gualberto Victorio**

# SCHEDULE A

| | FLSA | NonFLSA | Month 1 | Month 1 | Month 2 | Month 2 | Month 3 | Month 3 | Month 4 | Month 4 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Rojas | $ 11,860.00 | $ 2,965.20 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 14,825.20 |
| Garcia | $ 11,050.29 | $ 2,762.57 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 13,812.86 |
| Ibaceta | $ 16,914.44 | $ 4,228.61 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 21,143.05 |
| Sanchez | $ 20,917.10 | $ 5,229.27 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 26,146.37 |
| Romano | $ 2,007.95 | $ 501.99 | $ 2,007.95 | $ 501.99 | $ 2,007.95 | $ 501.99 | $ 2,007.95 | $ 501.99 | $ 2,007.95 | $ 501.99 | $ 12,549.70 |
| Salas | $ 2,235.03 | $ 558.76 | $ 2,235.03 | $ 558.76 | $ 2,235.03 | $ 558.76 | $ 2,235.03 | $ 558.76 | $ 2,235.03 | $ 558.76 | $ 13,968.95 |
| Balbuena | $ 433.58 | $ 108.40 | $ 433.58 | $ 108.40 | $ 433.58 | $ 108.40 | $ 433.58 | $ 108.40 | $ 433.58 | $ 108.40 | $ 2,709.90 |
| Jaimes | $ 2,653.01 | $ 663.25 | $ 2,653.01 | $ 663.25 | $ 2,653.01 | $ 663.25 | $ 2,653.01 | $ 663.25 | $ 2,653.01 | $ 663.25 | $ 16,581.30 |
| Victorio | $ 2,331.84 | $ 582.96 | $ 2,331.84 | $ 582.96 | $ 2,331.84 | $ 582.96 | $ 2,331.84 | $ 582.96 | $ 2,331.84 | $ 582.96 | $ 14,574.00 |
| Cerna | $ 1,432.27 | $ 358.07 | $ 1,432.27 | $ 358.07 | $ 1,432.27 | $ 358.07 | $ 1,432.27 | $ 358.07 | $ 1,432.27 | $ 358.07 | $ 8,951.70 |
| Cortez | $ 2,698.80 | $ 674.70 | $ 2,698.80 | $ 674.70 | $ 2,698.80 | $ 674.70 | $ 2,698.80 | $ 674.70 | $ 2,698.80 | $ 674.70 | $ 16,867.50 |
| Rodriguez | $ 4,458.91 | $ 1,114.73 | $ 4,458.91 | $ 1,114.73 | $ 4,458.91 | $ 1,114.73 | $ 4,458.91 | $ 1,114.73 | $ 4,458.91 | $ 1,114.73 | $ 27,868.20 |
| Veliz | $ 5,885.20 | $ 1,471.30 | $ 5,885.20 | $ 1,471.30 | $ 5,885.20 | $ 1,471.30 | $ 5,885.20 | $ 1,471.30 | $ 5,885.20 | $ 1,471.30 | $ 36,782.50 |
| Cordero | $ 870.07 | $ 217.52 | $ 870.07 | $ 217.52 | $ 870.07 | $ 217.52 | $ 870.07 | $ 217.52 | $ 870.07 | $ 217.52 | $ 5,437.95 |
| Attorneys | $ 22,844.80 | $ 5,711.20 | $ 22,844.80 | $ 5,711.20 | $ 22,844.80 | $ 5,711.20 | $ 22,844.80 | $ 5,711.20 | $ 22,844.80 | $ 5,711.20 | $ 142,780.00 |

TOTAL $ 374,999.18